# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### WINSTON-SALEM DIVISION

THE HOMESOURCE, CORP.,      )
                            )
      Plaintiff,         )
                            )
v.                          )      Action No. 1:19-mc-00006
                            )
RETAILER WEB SERVICES, LLC,   )
and JOHN DOES 1-3,        )
                            )
      Defendants.      )

## NON-PARTY NATIONWIDE'S BRIEF IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA FOR DOCUMENTS AND FOR PROTECTIVE ORDER

### PRELIMINARY STATEMENT

Non-party Nationwide Marketing Group, LLC ("Nationwide"), by counsel, moves to quash the subpoena for documents issued by Plaintiff The HomeSource, Corp. ("HomeSource") pursuant to Federal Rule of Civil Procedure ("Rule") 45(d)(3) because the subpoena: (1) fails to allow a reasonable time to comply; (2) requires disclosure of privileged or otherwise protected matter, including confidential commercial information; and (3) subjects Nationwide to undue burden and expense. In the alternative, Nationwide requests that the Court enter a protective order and specify conditions for production if HomeSource shows a substantial need for the documents that cannot be otherwise met without undue hardship to

Nationwide and ensures that Nationwide will be reasonably compensated for its efforts pursuant to Rules 26(c) and 45(d)(3).

This Court has jurisdiction over Nationwide's motion to quash pursuant to Rule 45(f). Nationwide does not consent to the transfer of this motion to quash to the issuing court in the District of New Jersey. The subpoena commands the investigation, assembly, and production of documents from Nationwide's principal place of business in Winston-Salem, North Carolina, giving this Court jurisdiction to rule on this motion.

## STATEMENT OF THE FACTS

On September 13, 2018, HomeSource served Nationwide, who is not a party to the underlying action, a subpoena commanding production of responsive documents by September 26, just 9 business days later, along with a copy of its First Amended Complaint ("FAC") against defendants Retailer Web Services, LLC ("RWS") and John Does 1-3. [Ex. 1 (Decl. of Timothy Andrew W. Nerhood); Ex. 2 (subpoena); Ex. 3 (FAC).] HomeSource's allegations against RWS are for claims of false and misleading advertising under the Lanham Act, defamation, tortious interference of prospective economic advantage and of contract, and unfair competition. [Ex. 3, Counts I-V.] The allegations against John Does 1-3 are for claims under the Computer Fraud and Abuse Act and for tortious interference of contract. [Ex. 3, Counts VI-VII.]

2

According to the FAC, "[b]oth HomeSource and RWS provide competitive technological services, including … operating websites for the same types of retail customers." [Ex. 3, ¶ 2.] Specifically, "[i]n late 2017, HomeSource launched a product that directly competes with RWS's product…." [Ex. 3, ¶ 3.] According to HomeSource, "[o]n July 16, 2018 … RWS began a smear campaign designed to unfairly disparage HomeSource and deceive its customers." [Ex. 3, ¶¶ 3-4.] Further, "[o]n or about July 19, 2018 … RWS emailed HomeSource notice of a "security hole" in HomeSource's software … and then uploaded a video … advertising the "security hole" to the public." [Ex. 3, ¶ 5.] Twenty-four days later, "[b]eginning on or about August 9, 2018," HomeSource began to suffer a variety of cyber-attacks, a hacking attempt, and a fake customer review, with the last attack occurring on August 27, 2018, all of which HomeSource was able to identify and shut down. [Ex. 3, ¶¶ 5-16.] HomeSource has not alleged that RWS caused the cyber-attacks, the hacking attempt, or the fake customer review. [Ex. 3, Counts VI-VII.]

Nationwide is North America's largest buying and marketing organization for independent dealers, including rent to own dealers, of appliances, furniture, electronics, specialty electronics, and custom installation, competing against national chains, e.g. Best Buy. [Ex. 1, ¶ 2.]

3

Nationwide has over 5,500 members, operating approximately 14,000 store fronts. [*Id.*]

Nationwide is mentioned in only 3 paragraphs of HomeSource's 120-paragraph FAC. According to HomeSource, Nationwide considered investing in HomeSource; Nationwide signed a nondisclosure agreement and received proprietary information about HomeSource; and, ultimately, Nationwide did not invest in HomeSource but invested in RWS, according to a press release from February 24, 2018. [Ex. 3, ¶¶ 35-37.] RWS has, on occasion, performed services for Nationwide and its customers. [Ex. 1, ¶ 3.] In February 2018, RWS announced that the company received an investment from Nationwide, and stated that RWS has "been a part of the Nationwide Marketing Group family for over 15 years." *See* https://sleepretailer.com/industry/retailer-web-services-announces-investment-partnership-new-digital-ad-platform/. [*Id.*] Nationwide has exchanged numerous documents with RWS, long before February 2018. [*Id.*]

To put the subpoena into context, however, HomeSource has commanded that Nationwide search for documents from January 1, 2017 to present. [Ex. 2, Definitions ("Def.") ¶ 9.] Thus, the search for documents is to begin months before HomeSource's competitive product launch in late 2017, more than a year before the February 2018 announcement, and more than a year-and-a-half

4

before RWS's alleged smear campaign in July 2018. [Ex. 1, ¶ 3-5.] The FAC does not allege that Nationwide knew of or participated in any way in the conduct giving rise to HomeSource's claims against RWS or John Does 1-3.

The broad scope and short return date render compliance with the subpoena unrealistic for Nationwide. [*Id.*, ¶ 6.] The subpoena requires Nationwide to search for an expansive list of documents from multiple custodians, which will require Nationwide to identify, contact, and interview numerous potential document custodians to determine whether they have responsive documents. [*Id.*, ¶ 7.] Potentially responsive documents will need to be gathered from individual professionals' computers and other sources; reviewed by Nationwide for responsiveness, privilege, and other confidential information that is protected from disclosure; redacted by Nationwide, as appropriate, to protect confidential, privileged, or private information; reviewed by Nationwide's clients for privilege or other protections from disclosure; and then processed by Nationwide for production. [*Id.*]

The majority of the documents sought are not likely to be material or relevant to HomeSource's lawsuit. [Ex. 1, ¶ 8.] HomeSource's only allegations against Nationwide were that Nationwide expressed an interest in HomeSource; signed and received documents regarding HomeSource pursuant to a nondisclosure agreement; and ultimately did not invest in HomeSource,

but invested in RWS. [Ex. 3, ¶¶ 35-37.] To the extent the discovery requests are aimed at the documents Nationwide received pursuant to the NDA and whether Nationwide provided any such document to RWS, such a request may be relevant. [Ex. 1, ¶ 8.] However, HomeSource's discovery is aimed far and wide from that mark. [*Id.*] The specific requests are listed below:

Request No. 1: "All Documents and Communications exchanged between You and RWS Concerning (a) HomeSource; (b) the newsletter attached to [the FAC]; (c) this Action [meaning the FAC]; and/or (d) the allegations set forth in the [FAC]."

Request No. 2: "All Documents and Communications Concerning Your contracts, agreements, or business relationship with RWS."

Request No. 3: "All Documents and Communications Concerning any person(s) or entit(ies) with an ownership interest in RWS, including but not limited to whether Nationwide has any direct or indirect ownership interest in RWS, and all Documents and Communications related to Local Retail Solutions, LLC."

Request No. 4: "All Documents and Communications Concerning the relationship between Local Retail Solutions, LLC, and RWS."

Request No. 5: "All Documents and Communications concerning the non-disclosure agreement ("NDA") that You entered with HomeSource, and concerning whether information that You received from HomeSource pursuant to the NDA was ever provided to RWS's employees, directors, executives and/or owners."

Request No. 6: "All Documents Concerning whether any of Your employees, directors, executives, or owners used to be employed or affiliated with RWS."

6

Request No. 7: "All Documents Concerning whether any of Your former employees, directors, executives, or owners are now employed or affiliated with RWS."

Request No. 8: "All Documents and Communications Concerning Your knowledge of the DoS, DDoS, hacking attacks, and any other interference or access attempts to HomeSource's websites or its customers' websites, as set forth in the [FAC]."

Request No. 9: "Add Documents sufficient to identify any of Your parent or subsidiary companies." [Ex. 2, Request 9.]

[Ex. 2.]

In conjunction with the requests, the subpoena's definitions make compliance unrealistic. [Ex. 1, ¶ 9.] The subpoena's broad definitions expand Nationwide's search obligations exponentially. [*Id.*] The subpoena's definitions are as follows:

1. "You" refers to Nationwide and "any of its predecessors and successors, and ***all*** of its past, present, or ***future*** owners, members, officers, directors, shareholders, affiliates, owners, subsidiaries, parents, sister companies, employees, representatives, lawyers, agents, and others acting on its behalf." [Ex. 2, Def. 1 (emphasis added).] This definition is incredibly expansive and goes well beyond the obligations to Nationwide to interview its present officers, directors, and employees and search its business records for relevant information. [Ex. 1, ¶ 10.] Nationwide must speculate as to who its "future" owners, etc., would be in order to satisfy the subpoena. [*Id.*]

7

2. "RWS" and "HomeSource" contain overbroad definitions. [*Id.*, ¶ 11.] Instead of simply identifying the corporations, the subpoena requires Nationwide to speculate as to who are their "agents, employees, assigns, heirs, successors, officers, directors, predecessors and representatives … and ***all other persons*** acting or purporting to act on [their] behalf or at [their] direction or control." [*Id.*; Ex. 2, Defs. 2, 3 (emphasis added).] Nationwide should not have to guess who HomeSource purports to include in its definitions. [Ex. 1, ¶ 11.]

3. "Documents," "Communications," and "Concerning" are likewise defined in a manner that is overbroad and unduly burdensome. [*See id.*, ¶ 12.]

- "Documents" is defined to "mean ***all*** written, printed, typed, computerized, computer-generated, computer-stored, tape recorded, and visually or orally reproduced material ***of any kind, whether or not privileged***, and includes, but it not limited to, papers, writings, memoranda, ***correspondence***, stenographic, handwritten or other notes, books, pamphlets, minutes, contracts, agreements, subpoenas, inter-office and intra-office ***communications***, bulletins, circulars, procedures, diaries, records or notes of telephone conversations, bills, orders, receipts, charts, schedules, entries, prints, worksheets, lists, catalogues, computer printouts, e-mail, representations, reports, drawings, sketches, pictures, photographs, tape or other recordings, computer discs, films, and any tangible items or things of written, readable, graphic, audible or visual materials ***of any kind or character*** including data stored on magnetic media for audible or computer use or for word processing purposes, whether handwritten, typed, xeroxed, photostated, printed, duplicated, printed, duplicated, reproduced, recorded, videotaped, photographed, copied, microfilmed, micro-carded or transcribed by any means ***including, without limitation, each interim as***

8

***well as final draft and any revision***." [Ex. 2, Def. 10 (emphasis added).]

- "Communication" is defined to "mean the oral, textual or other transmittal (in the form of facts, ideas, inquiries, or otherwise)." [Ex. 2, Def. 11.]

- "Concerning means directly or indirectly, in whole or in part, referring to, relating to, connected with, commenting on, impinging or impacting upon, supporting, contradicting, establishing, affecting, prepared in connection with, responding to, analyzing, reflecting or constituting." [Ex. 2, Def. 16.]

The definition of Document includes communications, making the additional definition of Communications redundant. [Ex. 1, ¶ 12.] The dictionary definition of concerning means related to, making the additional descriptions unnecessary. [*Id.*]

## THE PARTIES CONFER AS TO THE SCOPE OF DISCOVERY

Following service of HomeSource's subpoena, counsel for Nationwide raised Nationwide's concerns about the subpoena's various overbroad and redundant provisions with HomeSource's counsel, and diligently attempted to narrow the scope of the subpoena. [Ex. 1, ¶ 13.] Between September 25, 2018 and mid-December 2018, counsel for Nationwide and HomeSource communicated by phone and email regarding a range of discovery issues associated with HomeSource's subpoena. [*Id.*, ¶ 14.[1]] Pursuant these meet-and-confer efforts, Nationwide's IT department conducted various searches

---

[1] Relevant email communications are attached hereto as composite Ex. 1-A.

9

recommended by HomeSource, several of which were narrower than the scope of the original subpoena, to determine the feasibility of compliance and managing a document production. [*Id.*, ¶ 15.] Even after discussions with HomeSource's counsel in an effort to limit the scope of the subpoena, the number of documents and materials identified was significant. [*Id.*, ¶ 16.] In particular, HomeSource's requested modified search, which was limited to the term "HomeSource" and dated from January 1, 2018 through the dates of the parties' meet-and-confer, yielded in excess of 26,000 documents and emails, many of which will require redactions in order to maintain the confidentiality of Nationwide's proprietary and otherwise confidential information. [*Id.*, ¶ 17.] Nationwide communicated these totals to HomeSource, along with an offer to apply additional search filters in an effort to narrow the universe of potential results. [*Id.*, ¶ 18.] Even after applying HomeSource's proposed modifications, however, Nationwide identified over 6,700 emails and documents consisting of roughly 42 Gb of data in response to the amended search, rendering compliance exceedingly burdensome. [*Id.*, ¶ 19.]

## QUESTION PRESENTED

Whether the Court should quash the non-party subpoena and/or issue a protective order and specify conditions for the production of documents in response to the subpoena.

## ARGUMENT

### A. Applicable Rules on a Motion to Quash and For Protective Order

The rules on a motion to quash are straightforward and begin with a duty on the issuing attorney to avoid issuing an overly broad and unduly burdensome subpoena. Pursuant to Rule 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction–which may include lost earnings and reasonable attorney's fees–on a party or attorney who fails to comply."

The Court is then charged with a duty to police discovery. Pursuant to Rule 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required **must** quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; … (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to under burden." (Emphasis added.) Thus, the Court hearing a motion to quash

11

is required to apply the balancing standards: relevance, need, confidentiality, and harm, so that even if the information sought it relevant, discovery is not allowed where no need is shown, or where compliance is overly burdensome, or where the potential harm caused by production outweighs the benefits. *Insulate America v. Masco Corp.*, 227 F.R.D. 427, 432 (W.D.N.C. 2005).

The Court is granted broad discretion to protect non-parties, strangers to the litigation, from undue burden and expense. Pursuant to Rule 45(d)(3)(B), "[t]o protect a person subject to … a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if its requires: (i) disclosing a trade secret or other confidential … commercial information…." To this end, courts have concluded that disclosure to a competitor is more harmful than disclosure to a non-competitor. *Insulate America*, 227 F.R.D. at 433. Here, HomeSource appears to take issue with Nationwide for allegedly investing in RWS rather than HomeSource.

Nevertheless, pursuant to Rule 45(d)(3)(C), "[i]n the circumstances described in Rule 45 (d)(3)(B), the court may, instead of quashing or modifying the subpoena, order … production under specified conditions if the serving party: (i) shows a substantial need for the … material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated."

12

Likewise, pursuant to Rule 26(c), any person from whom discovery is sought may move for a protective order to protect the person "… from annoyance, embarrassment, oppression, or undue burden or expenses, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying the terms, including the time and place or the allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one elected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; … (G) requiring that a trade secret or other confidential … commercial information not be revealed or be revealed only in a specified way…."

## B. HomeSource's Subpoena to Non-Party Nationwide Fails to Allow a Reasonable Time to Comply, is Overly Broad, Unduly Burdensome, and Should Be Quashed

Rule 45(d)(3) mandates that this Court must quash a subpoena that fails to allow a reasonable time to comply; requires disclosure of privileged or other protected matter; or subjects a person to undue burden. HomeSource's subpoena to non-party Nationwide fails all three of these tests.

### 1. The HomeSource subpoena fails to allow a reasonable time to comply.

As initially served, the subpoena allowed only 9 business days for compliance, which is unreasonable as a matter of law. Rule 45(c)(3)(A)(i) provides that "the issuing court must quash" a subpoena that "fails to allow a reasonable time to comply." Although Rule 45 does not define "reasonable time," courts have found fourteen days from the date of service as presumptively reasonable. *Tri Investments, Inc. v. Aiken Cost Consultants, Inc.*, No. 2:11CV4, 2011 WL 5330295, at *1 (W.D.N.C. Nov. 7, 2011). Federal courts have also found compliance times of nine business days not to be reasonable. *Thomas v. IEM, Inc.*, No. CIV. A. 06-886-B-M2, 2008 WL 695230, at *3 (M.D. La. Mar. 12, 2008) (15 days, including 9 business days, was not adequate, especially considering the Christmas holiday fell during those 15 days); *Anderson v. Dobson,* No. 06–02, 2006 WL 3390631, at *3 (W.D.N.C. Nov. 22, 2006) (10 total days was not adequate); *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 320, 327 (N.D. Ill.2005) (10 business days deposition notice unreasonable in complex litigation); *Hall v. Louisiana*, No. CIV.A. 12-657-BAJ, 2014 WL 1652791, at *13 (M.D. La. Apr. 23, 2014) (compliance timeframes between 9 and 12 days were "clearly unreasonable"); *see also Gaines v. Techline, Inc.*, No. 1:13-CV-0576, 2016 WL 1453895, at *2 (W.D. La. Apr. 11, 2016) (stating that "courts generally quash subpoenas which allow less than 14 days for compliance."). Here, the subpoena provided only

14

thirteen days (and nine business days) for compliance. The unreasonable demand for compliance within nine business days is magnified here, where the subpoena is overly broad will impose an undue burden on Nationwide that is disproportionate given Nationwide's non-involvement in the underlying suit.

> ## 2. The HomeSource subpoena requests confidential, potentially privileged information, the need for which is outweighed by the undue burden and prejudice that compliance imposes on Nationwide.

The crushing weight of HomeSource's subpoena results from Nationwide's need to: identify, contact, and interview numerous potential document custodians to determine whether they have responsive documents; gather the potentially responsive documents from individual professionals' computers and other sources; review the assembled documents for responsiveness, privilege, and other confidential information that is protected from disclosure; redact, as appropriate, to protect confidential, privileged, or private information from disclosure; have those documents marked for review by Nationwide's clients for privilege or other protections from disclosure; and then have those documents processed by Nationwide for production.

HomeSource's only allegations against Nationwide were that Nationwide considered investing in HomeSource; Nationwide signed a nondisclosure agreement and received proprietary information about HomeSource; and, ultimately, Nationwide did not invest in HomeSource but

15

invested in RWS. Request No. 5 appears to be the only request seeking relevant information as to whether Nationwide provided RWS the information Nationwide received from HomeSource pursuant to the non-disclosure agreement. The other requests are immaterial, irrelevant, overly broad, unduly burdensome, and seem intent on harassing Nationwide.

For instance, Request No. 1 seeks "All Documents and Communications exchanged between You and RWS Concerning (a) HomeSource; (b) the newsletter attached to [the FAC]; (c) this Action (sic) and/or (d) the allegations set forth in the [FAC]." Nationwide and RWS have exchanged numerous documents since RWS began to perform services for Nationwide and its customers (approximately 5,500 in total, operating approximately 14,000 store fronts), long before RWS issued its February 2018 announcement. HomeSource's subpoena commands that Nationwide review all of this documentation to determine whether any of it mentions HomeSource, the FAC, or any of the allegations set forth in HomeSource's 120-paragraph FAC. This request is extremely overly broad and unduly burdensome, especially since the search for responsive documents begins January 1, 2017, even though the allegations of the purported smear campaign did not begin until 19 months later in July 2018.

Request No. 2 seeks Nationwide's "contracts, agreements, and business relationships with RWS," which calls for the production of potentially privileged and confidential commercial proprietary information. Whether Nationwide has contracts or business relationships with RWS is irrelevant to HomeSource's allegations in the FAC, especially as against Nationwide. This request is then rendered exponentially over broad and unduly burdensome with the command that Nationwide produce "All Documents and Communications Concerning Your contracts, agreements, or business relationships with RWS."

Request No. 3 seeks "All Documents and Communications Concerning any[one] … with an ownership interest in RWS, including but not limited to all Documents and Communications Concerning whether Nationwide has any direct or indirect ownership interest in RWS, and all Documents and Communications related to Local Retail Solutions, Inc." Likewise, Request No. 4 seeks "All Documents and Communications Concerning the relationship between Local Retail Solutions, LLC and RWS." These discovery requests are a fishing expedition of unlimited magnitude when taking HomeSource's definitions into account, and have nothing to do with Nationwide, which is a separate corporate entity from RWS and Local Retail Solutions.

17

Requests Nos. 6 and 7 seek "All Documents Concerning whether any of [Nationwide's] employees, directors, executives, or owners used to be employed or affiliated with RWS" and whether those same individuals "are now employed or affiliated with RWS." That seems like a straightforward question that HomeSource could ask during a deposition of RWS rather than commanding Nationwide to undergo the tremendous burden and expense of questioning "all of its past, present, or future owners, members, officers, directors, shareholders, affiliates, owners, subsidiaries, parents, sister companies, employees, representatives, lawyers, agents, and others acting on its behalf" as mandated by HomeSource's definition of Nationwide.

And, from there, Nationwide must then gather the potentially responsive documents from individual professionals' computers and other sources; review the assembled documents for responsiveness, privilege, and other confidential information that is protected from disclosure; redact, as appropriate, to protect confidential, privileged, or private information from disclosure; have those documents marked for review by Nationwide's clients for privilege or other protections from disclosure; and then have those documents processed by Nationwide for production.

Request No. 8 seeks "All Documents and Communications Concerning [Nationwide's] knowledge of the DoS, DDoS, hacking attacks, and any other

18

interference or access attempts of HomeSource's websites or its customers' websites, as set forth in the Amended Complaint." Again, HomeSource commands that Nationwide undergo the tremendous burden and expense of questioning "all of its past, present, or future owners, members, officers, directors, shareholders, affiliates, owners, subsidiaries, parents, sister companies, employees, representatives, lawyers, agents, and others acting on its behalf" in order to satisfy HomeSource's fishing expedition. Just considering Nationwide's approximately 113 employees, the sheer number of hours that will be necessary to explain HomeSource's allegations to each of these persons and interview them about what documents they may have related to those allegations and where those documents are stored will result in Nationwide incurring tens of thousands of dollars in attorneys' fees and expenses. Given the significant evidence that HomeSource already possesses according to its FAC, e.g., ability "to successfully block these attacks within a few days" (Ex. 3, ¶ 8), "HomeSource possesses evidence that Hacking Doe was working from a specific, non-public list of former RWS customers (Ex. 3, ¶ 11), Fake-Customer Doe's email address (Ex. 3, ¶ 13), investigation and uncovering of Fake-Customer Doe's allegations were false (Ex. 3, ¶ 14), geolocation of the attack as coming from Scottsdale, Arizona (Ex. 3, ¶¶ 17, 21), HomeSource must show "a substantial need for the … material that cannot be otherwise met without

19

undue hardship and ensure[] that the subpoenaed person will be reasonably compensated as mandated by Rule 45(d)(3)(C).

Finally, in Request No. 9, HomeSource seeks "All Documents sufficient to identify any of [Nationwide's] parent and subsidiary companies." This request seeks irrelevant information and appears intent on harassing Nationwide merely because it did not invest in HomeSource.

Significantly, all of HomeSource's requests are rendered exponentially overbroad and unduly burdensome when read in conjunction with the subpoena's definitions. For example, below is Request No. 1(a) with HomeSource's definitions incorporated into the request as written.

| Request No. 1(a) | Request No. 1(a), Incorporating the Definitions (emphasis added) |
|---|---|
| All Documents and Communications exchanged between You and RWS Concerning HomeSource. | All Documents [meaning "***all*** written, printed, typed, computerized, computer-generated, computer-stored, tape recorded, and visually or orally reproduced material ***of any kind, whether or not privileged***, and includes, but it not limited to, papers, writings, memoranda, ***correspondence***, stenographic, handwritten or other notes, books, pamphlets, minutes, contracts, agreements, subpoenas, inter-office and intra-office ***communications***, bulletins, circulars, procedures, diaries, records or notes of telephone conversations, bills, orders, receipts, charts, schedules, entries, prints, worksheets, lists, catalogues, computer printouts, e-mail, representations, reports, drawings, sketches, pictures, photographs, tape or other recordings, computer discs, films, and any tangible items or things of written, readable, graphic, audible or visual materials ***of any kind or character*** including data stored on magnetic media for audible or computer use or for word processing |

Case 1:19-mc-00006-JLW   Document 2   Filed 01/21/19   Page 20 of 141

| | purposes, whether handwritten, typed, xeroxed, photostated, printed, duplicated, printed, duplicated, reproduced, recorded, videotaped, photographed, copied, microfilmed, micro-carded or transcribed by any means ***including, without limitation, each interim as well as final draft and any revision***"] and Communications [meaning "the oral, textual or other transmittal (in the form of facts, ideas, inquiries, or otherwise)"] exchanged between You [meaning Nationwide and "any of its predecessors and successors, and ***all*** of its past, present, or ***future*** owners, members, officers, directors, shareholders, affiliates, owners, subsidiaries, parents, sister companies, employees, representatives, lawyers, agents, and others acting on its behalf"] and RWS [including "its agents, employees, assigns, heirs, successors, officers, directors, predecessors and representatives … and ***all other persons*** acting or purporting to act on [their] behalf or at [their] direction or control"] Concerning [meaning "directly or indirectly, in whole or in part, referring to, relating to, connected with, commenting on, impinging or impacting upon, supporting, contradicting, establishing, affecting, prepared in connection with, responding to, analyzing, reflecting or constituting"] HomeSource ["including its agents, employees, assigns, heirs, successors, officers, directors, predecessors and representatives and ***all other persons*** acting or purporting to act on its behalf or at its direction or control"]. |

Again, this is only Request No. 1(a). HomeSource's 9 requests contain numerous subparts and commands the production of responsive documents within 9 business days rendering compliance unrealistic.

**C.     If the Subpoena is Not Quashed but Modified, Nationwide is Entitled to Specified Conditions for Production and a Protective Order**

21

As previously noted, pursuant to Rule 45(d)(3)(B), "To protect a person subject to … a subpoena, the court … may … modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information…." And, pursuant to Rule 45(d)(3)(C), "… the court may, instead of quashing or modifying the subpoena, order … production under specified conditions if the serving party: (i) shows a substantial need for the … material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated."

Nationwide's efforts to comply with the subpoena will obstruct its normal business operations. Before the Court modifies HomeSource's subpoena, the Court should require that HomeSource demonstrate a substantial need for the material that cannot be otherwise met without the undue hardship imposed on non-party Nationwide, and require that Nationwide be reasonably compensated for its efforts in trying to locate evidence for HomeSource's use in its lawsuit against RWS and John Does 1-3.

## CONCLUSION

Despite repeated efforts to confer with HomeSource and limit the scope of the subpoena, stretching over several months, HomeSource's demands remain overly broad. Hence, the Court should quash HomeSource's overly broad and unduly burdensome subpoena for documents pursuant to Rule

45(d)(3) because the subpoena fails to allow a reasonable time to comply, requires disclosure of privileged or other protected matter, and subjects Nationwide to under burden. In the alternative, before the Court modifies the subpoena, HomeSource should be required to demonstrate that it has a substantial need for each and every item it requests that cannot be otherwise met without undue hardship to Nationwide. Thereafter, the Court should and specify conditions for production and entry of a protective order pursuant to Rules 45(d)(3)(b) and 26(c) and ensure that Nationwide is reasonably compensated for its services pursuant to Rule 45(d)(3)(C).

Dated: January 21, 2019              Respectfully submitted,

/s/ Timothy Nerhood
N.C. Bar No. 25432

## CERTIFICATION OF COMPLIANCE WITH LR 7.3

I hereby certify that the foregoing Brief in Support contains 4,827 words in compliance with the limitations on length of briefs contained in Local Rule 7.3(d).

/s/ Timothy Nerhood

N.C. Bar No. 25432

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2019, I served a copy of the foregoing Motion to Quash Subpoena for Documents and Motion for Protective Order with the Clerk of Court via email and via US Mail upon the following:

Alexis Arena
Eric Clendening
FLASTER/GREENBERG
1835 Market Street, Suite 1050
Philadelphia, PA 19103
Alexis.Arena@flastergreenberg.com

Alexis Arena
Eric Clendening
FLASTER/GREENBERG
Commerce Center
1810 Chapel Avenue West
Cherry Hill NJ, 08002

*Attorneys for The HomeSource,*
*Corp.*

/s/ Timothy Nerhood
N.C. Bar No. 25432

25

EXHIBIT 1
Declaration of Timothy Nerhood

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| THE HOMESOURCE, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Action No. 1:19-mc-00006 |
| | ) | |
| RETAILER WEB SERVICES, LLC, | ) | |
| and JOHN DOES 1-3, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DECLARATION OF TIMOTHY ANDREW W. NERHOOD</u>

I, Timothy Andrew W. Nerhood, hereby state and declare as follows:

1.      I am a licensed attorney in good standing in the State of North Carolina.

2.      I am counsel for Nationwide Marketing Group, LLC ("Nationwide"). Nationwide is North America's largest buying and marketing organization for independent dealers, including rent to own dealers, of appliances, furniture, electronics, and specialty electronics. Nationwide's independent dealer clients compete against national chains, e.g. Best Buy. Nationwide has over 5,500 members, who operate approximately 14,000 storefronts.

3.      Retailer Web Services, LLC ("RWS") has, on occasion, performed services for Nationwide and its customers. In February 2018, RWS announced

that the company received an investment from Nationwide. The announcement stated that RWS has "been part of the Nationwide Marketing Group family for over 15 years." See https://sleepretailer.com/industry/retailer-web-services-announces-investment-partnership-new-digital-ad-platform/. RWS has exchanged numerous documents with Nationwide, long before February 2018.

4.     On September 13, 2018, The HomeSource Corp. ("HomeSource") served Nationwide with a subpoena commanding production of certain documents. This subpoena was issued in the above-captioned litigation entitled *The HomeSource Corp. v. Retailer Web Services, LLC*, Case No. 1:18-cv-11970-JBS-KMW, pending in the United States District Court for the District of New Jersey (the "Lawsuit"). Nationwide is not a party to the Lawsuit.

5.     This subpoena commands Nationwide to, among other things, search for documents from January 1, 2017 to present. This search for documents is to begin more than a year before the February 2018 announcement.

6.     In addition, the broad scope and short return date of the HomeSource subpoena render compliance unrealistic for Nationwide.

7.     The subpoena requires Nationwide to search for an expansive list of documents from multiple custodians, which will require Nationwide to

2

identify, contact, and interview numerous potential document custodians to determine whether they have responsive documents. Potentially responsive documents will need to be gathered from individual professionals' computers and other sources; reviewed by Nationwide for responsiveness, privilege, and other confidential information that is protected from disclosure; redacted by Nationwide, as appropriate, to protect confidential, privileged, or private information; reviewed by Nationwide's clients for privilege or other protections from disclosure; and then processed by Nationwide for production.

8.     To the best of my knowledge, information, and belief, the majority of the documents sought are not likely to be material or relevant to the Lawsuit. To the extent the discovery is aimed at documents Nationwide received pursuant to a nondisclosure agreement, which may relate to HomeSource, such a request may be relevant. However, HomeSource's discovery is aimed far and wide from that mark.

9.     In conjunction with the requests, the subpoena's definitions make compliance unrealistic. The subpoena's broad definitions expand Nationwide's search obligations exponentially.

10.     The term "You," as defined in the HomeSource subpoena, is incredibly expansive and goes well beyond the obligations to Nationwide to interview its present officers, directors, and employees and search its business

records for relevant information. Nationwide must speculate as to who its "future" owners, etc., would be in order to satisfy the subpoena.

11. "RWS" and "HomeSource" contain overbroad definitions. Instead of simply identifying the corporations, the subpoena requires Nationwide to speculate as to who are their "agents, employees, assigns, heirs, successors, officers, directors, predecessors and representatives … and ***all other persons*** acting or purporting to act on [their] behalf or at [their] direction or control." Nationwide should not have to guess who HomeSource purports to include in its definitions.

12. In addition, the definition of "Document" includes communications, making the additional definition of "Communications" redundant. The dictionary definition of concerning means related to, making the additional descriptions unnecessary.

13. Following receipt of HomeSource's subpoena, I raised my concerns about the subpoena's various overbroad and redundant provisions with HomeSource's counsel, and diligently attempted to narrow the scope of HomeSource's subpoena.

14. Between September 25, 2018 and mid-December 2018, I communicated with HomeSource's counsel by phone and email regarding a range of discovery issues associated with HomeSource's subpoena. Relevant

4

email communications are attached hereto as composite Ex. 1-A.

15.    Pursuant to these meet-and-confer efforts, Nationwide's Information Technology Department conducted various searches recommended by HomeSource, several of which were narrower than the scope of the original subpoena, to determine the feasibility of compliance and managing a document production.

16.    Even after discussions with HomeSource's counsel in an effort to limit the scope of the subpoena, the number of documents and materials identified was significant.

17.    In particular, HomeSource's requested modified search, which was limited to the term "HomeSource" and dated from January 1, 2018 through the dates of the parties' meet-and-confer, yielded in excess of 26,000 documents and emails, many of which will require redactions in order to maintain the confidentiality of Nationwide's proprietary and otherwise confidential information.

18.    I communicated these totals to HomeSource's counsel, along with an offer to apply additional search filters in an effort to narrow the universe of potential results.

19.    Even after applying HomeSource's proposed modifications, however, Nationwide identified over 8,700 emails and documents consisting of

roughly 42Gb of data in response to the amended search, rendering compliance exceedingly burdensome.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed On: January 21, 2019  _____

Timothy Andrew W. Nerhood
N.C. Bar No. 25432

6

EXHIBIT 1-A

| | |
|---|---|
| **From:** | Arena, Alexis <Alexis.Arena@flastergreenberg.com> |
| **Sent:** | Tuesday, December 11, 2018 11:48 AM |
| **To:** | Timothy Nerhood |
| **Subject:** | RE: Discovery |

Tim,

We continue to be surprised by the large number of results, particularly if (as you say) Nationwide is not part of the dispute with HomeSource and is just being "pulled into it." Nationwide did not serve objections to the subpoena during the period time for compliance, so we do expect that Nationwide will be making a good faith effort to comply with the subpoena. We want to likewise make a good faith effort to avoid such a large number of results and are trying to work with you on a reasonable compromise. We want to avoid the expense associated with going to court on this issue, but are willing to do so if needed to get a good faith response to the subpoena.

Please let me know the number of search results for "HomeSource" for the time period from August 1, 2017-October 1, 2017 (2 months) and June 1, 2018 to September 30, 2018 (4 months) only.

Thank you,
Alexis

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Wednesday, November 28, 2018 4:29 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

Alexis,

I had the chance to speak with my folks today about the discovery request and how we can approach it. I think you can probably guess that they are still not happy about being pulled into the dispute between Homesource and RWS. There was considerable pushback on why you are not going directly to RWS and Homesource for information.

As I stated previously, the search of just "Homesource" generated over 26,000 results for the search period of January 1, 2018 to the date of the search. To use the legal keywords, requiring a non-party to review 26,000 results is unduly burdensome and expensive. We do, however, have the ability to apply filters to the search. If you want to provide filters, we will run a new search with those filters. If the search provides a reasonable number of results to review and you are willing to pay for the expenses and attorneys' fees associated with the review and redaction of the results, we will comply with your request. Otherwise, we are going to have to respectfully deny your request and move forward through the courts, if necessary. Of course, my preference is that Homesource drop the request of Nationwide altogether and go back to its own records and the records of RWS for whatever its legal wants are.

Please let me how you would like to proceed. Thanks, Tim.

**From:** Timothy Nerhood
**Sent:** Monday, November 26, 2018 11:42 AM
**To:** 'Arena, Alexis' <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

Thanks for the follow up.  The search was actually just 2018 YTD.  I was trying to set up a meeting with IT to discuss options, but I dropped everything last week while enjoying Thanksgiving.  I'll reinitiate the efforts.  Thanks, Tim.

---

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 26, 2018 11:11 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Hi Tim,

Just following up on this.  Hope you had a good holiday.

Thanks,
Alexis

---

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, November 13, 2018 3:00 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

I will confirm on the timeline.  I appreciate the offer to skim the documents, but I have been told that there is confidential information within the documents that will need to be redacted prior to distribution.  I'll get back to you.

---

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, November 13, 2018 2:31 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Hi Tim,

Does this also include the time limit - August 1, 2017 to September 4, 2018?  I'm open to considering any further parameters you have.  Our intention was not to require the production of 26k+ documents.  If it is easiest for Nationwide to just produce the whole batch, however, we can handle skimming through them.

Thanks,
Alexis

---

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 2:59 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

Turns out that search is just on "homesource" and not "home source".  Are you sure you don't have any further limiting parameters?

---

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 2:02 PM

2

**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Great, thank you.

---

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 2:00 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

Good question.  I asked that he search for "HomeSource" and "Home Source".  I don't know how he effectuated that search.  I'll check.

---

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 1:54 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

This only includes documents where "Home Source" was together, correct?  Not emails that contained the terms "home" and "source" separately?  Duplicates can also be excluded (it's not necessary to include every email in the chain).  This is a surprising large number (to me).  If it is still that many pertaining to HomeSource/"Home Source", then we can handle the production.  If we need to discuss the logistics of that further, let me know.

Thank you.

---

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 1:26 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

I have been told by IT that it is 26,000+ documents/emails.  I have requested them all, but do you want a more narrow search?

---

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 1:24 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

I am following up on this matter, because I do not believe that we received any discovery responses from Nationwide.  Please clarify when those responses will be received.

Thank you,
Alexis

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908 | **E**: alexis.arena@flastergreenberg.com

Email | Bio | Offices | V-card | LinkedIn | Twitter

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, September 25, 2018 10:39 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

Good speaking with you as well.

We discussed narrowing request No. 1 to request only documents during August 1, 2017 to September 4, 2018 time frame. (The NDA was signed around August 2017 and the Amended Complaint was filed on 9/4/18.) I suggested that Nationwide simply run a search for "HomeSource" or "Home Source" to gather responsive documents.

You indicated that Nationwide is amenable to responding to Request No. 5. Regarding Request No. 8, I suggested that you briefly investigate whether Nationwide has any documents or information responsive to this request. If after a good faith investigation, Nationwide does not, then that is a sufficient response.

Regarding the remaining requests, we agreed to have another conversation on October 11th at 10am (after RWS's responses to our discovery requests are due on October 10). I further agreed to give Nationwide an extension until October 26, 2018 to respond to our requests.

I look forward to speaking with you on October 11.

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908 | **E**: alexis.arena@flastergreenberg.com

**Email** | **Bio** | **Offices** | **V-card** | **LinkedIn** | **Twitter**

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, September 25, 2018 10:23 AM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** Discovery

Alexis,

Good speaking with you. Please send me a copy of your revised discovery position so that I can respond. Thanks, Tim.



Timothy Nerhood
Hendrick Bryant Nerhood Sanders & Otis, LLP
723 Coliseum Drive, Suite 101
Winston Salem, NC 27106-5326
Phone: (336) 723-7200
Fax: (336) 723-7201
tnerhood@hendricklawfirm.com

PRIVILEGED AND CONFIDENTIAL

This electronic message and any attachments are the confidential property of the sender. The information is intended only for use of the person to whom it was addressed. Any other interception, copying, accessing or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward the message without permission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege that may attach to this communication. Thank you for your cooperation.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**Timothy Nerhood**

| | |
|---|---|
| **From:** | Timothy Nerhood |
| **Sent:** | Wednesday, November 28, 2018 4:29 PM |
| **To:** | 'Arena, Alexis' |
| **Subject:** | RE: Discovery |

Alexis,

I had the chance to speak with my folks today about the discovery request and how we can approach it. I think you can probably guess that they are still not happy about being pulled into the dispute between Homesource and RWS. There was considerable pushback on why you are not going directly to RWS and Homesource for information.

As I stated previously, the search of just "Homesource" generated over 26,000 results for the search period of January 1, 2018 to the date of the search. To use the legal keywords, requiring a non-party to review 26,000 results is unduly burdensome and expensive. We do, however, have the ability to apply filters to the search. If you want to provide filters, we will run a new search with those filters. If the search provides a reasonable number of results to review and you are willing to pay for the expenses and attorneys' fees associated with the review and redaction of the results, we will comply with your request. Otherwise, we are going to have to respectfully deny your request and move forward through the courts, if necessary. Of course, my preference is that Homesource drop the request of Nationwide altogether and go back to its own records and the records of RWS for whatever its legal wants are.

Please let me how you would like to proceed. Thanks, Tim.

**From:** Timothy Nerhood
**Sent:** Monday, November 26, 2018 11:42 AM
**To:** 'Arena, Alexis' <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

Thanks for the follow up. The search was actually just 2018 YTD. I was trying to set up a meeting with IT to discuss options, but I dropped everything last week while enjoying Thanksgiving. I'll reinitiate the efforts. Thanks, Tim.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 26, 2018 11:11 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Hi Tim,

Just following up on this. Hope you had a good holiday.

Thanks,
Alexis

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, November 13, 2018 3:00 PM

**To:** Arena, Alexis <<u>Alexis.Arena@flastergreenberg.com</u>>
**Subject:** RE: Discovery

I will confirm on the timeline. I appreciate the offer to skim the documents, but I have been told that there is confidential information within the documents that will need to be redacted prior to distribution. I'll get back to you.

**From:** Arena, Alexis <<u>Alexis.Arena@flastergreenberg.com</u>>
**Sent:** Tuesday, November 13, 2018 2:31 PM
**To:** Timothy Nerhood <<u>tnerhood@hendricklawfirm.com</u>>
**Subject:** RE: Discovery

Hi Tim,

Does this also include the time limit - August 1, 2017 to September 4, 2018? I'm open to considering any further parameters you have. Our intention was not to require the production of 26k+ documents. If it is easiest for Nationwide to just produce the whole batch, however, we can handle skimming through them.

Thanks,
Alexis

**From:** Timothy Nerhood [<u>mailto:tnerhood@hendricklawfirm.com</u>]
**Sent:** Monday, November 12, 2018 2:59 PM
**To:** Arena, Alexis <<u>Alexis.Arena@flastergreenberg.com</u>>
**Subject:** RE: Discovery

Turns out that search is just on "homesource" and not "home source". Are you sure you don't have any further limiting parameters?

**From:** Arena, Alexis <<u>Alexis.Arena@flastergreenberg.com</u>>
**Sent:** Monday, November 12, 2018 2:02 PM
**To:** Timothy Nerhood <<u>tnerhood@hendricklawfirm.com</u>>
**Subject:** RE: Discovery

Great, thank you.

**From:** Timothy Nerhood [<u>mailto:tnerhood@hendricklawfirm.com</u>]
**Sent:** Monday, November 12, 2018 2:00 PM
**To:** Arena, Alexis <<u>Alexis.Arena@flastergreenberg.com</u>>
**Subject:** RE: Discovery

Good question. I asked that he search for "HomeSource" and "Home Source". I don't know how he effectuated that search. I'll check.

**From:** Arena, Alexis <<u>Alexis.Arena@flastergreenberg.com</u>>
**Sent:** Monday, November 12, 2018 1:54 PM
**To:** Timothy Nerhood <<u>tnerhood@hendricklawfirm.com</u>>
**Subject:** RE: Discovery

This only includes documents where "Home Source" was together, correct? Not emails that contained the terms "home" and "source" separately? Duplicates can also be excluded (it's not necessary to include every email in the

2

chain). This is a surprising large number (to me). If it is still that many pertaining to HomeSource/"Home Source", then we can handle the production. If we need to discuss the logistics of that further, let me know.

Thank you.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 1:26 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

I have been told by IT that it is 26,000+ documents/emails. I have requested them all, but do you want a more narrow search?

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 1:24 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

I am following up on this matter, because I do not believe that we received any discovery responses from Nationwide. Please clarify when those responses will be received.

Thank you,
Alexis

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908| **E:** alexis.arena@flastergreenberg.com

**Email** I **Bio** I **Offices** I **V-card** I **LinkedIn** I **Twitter**

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, September 25, 2018 10:39 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

Good speaking with you as well.

We discussed narrowing request No. 1 to request only documents during August 1, 2017 to September 4, 2018 time frame. (The NDA was signed around August 2017 and the Amended Complaint was filed on 9/4/18). I suggested that Nationwide simply run a search for "HomeSource" or "Home Source" to gather responsive documents.

You indicated that Nationwide is amenable to responding to Request No. 5. Regarding Request No. 8, I suggested that you briefly investigate whether Nationwide has any documents or information responsive to this request. If after a good faith investigation, Nationwide does not, then that is a sufficient response.

Regarding the remaining requests, we agreed to have another conversation on October 11th at 10am (after RWS's responses to our discovery requests are due on October 10). I further agreed to give Nationwide an extension until October 26, 2018 to respond to our requests.

I look forward to speaking with you on October 11.


**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908 | **E**: alexis.arena@flastergreenberg.com

Email | Bio | Offices | V-card | LinkedIn | Twitter

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

---

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, September 25, 2018 10:23 AM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** Discovery

Alexis,

Good speaking with you. Please send me a copy of your revised discovery position so that I can respond. Thanks, Tim.



Timothy Nerhood
Hendrick Bryant Nerhood Sanders & Otis, LLP
723 Coliseum Drive, Suite 101
Winston Salem, NC 27106-5326
Phone: (336) 723-7200
Fax: (336) 723-7201
tnerhood@hendricklawfirm.com

PRIVILEGED AND CONFIDENTIAL

This electronic message and any attachments are the confidential property of the sender. The information is intended only for use of the person to whom it was addressed. Any other interception, copying, accessing or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance

on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward the message without permission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege that may attach to this communication. Thank you for your cooperation.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

| | |
|---|---|
| **From:** | Timothy Nerhood |
| **Sent:** | Monday, November 26, 2018 5:07 PM |
| **To:** | 'Arena, Alexis' |
| **Subject:** | RE: Discovery |

I've been told that some portion of that will be due to multiple recipients in our system. We'll try and peel that out. Anyhow, I hope to get in touch with them this week. Thanks, Tim.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 26, 2018 4:27 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Sounds good.

That is a surprising amount of documents to us for just 2018 YTD. I will wait to hear from you.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 26, 2018 11:42 AM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

Thanks for the follow up. The search was actually just 2018 YTD. I was trying to set up a meeting with IT to discuss options, but I dropped everything last week while enjoying Thanksgiving. I'll reinitiate the efforts. Thanks, Tim.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 26, 2018 11:11 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Hi Tim,

Just following up on this. Hope you had a good holiday.

Thanks,
Alexis

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, November 13, 2018 3:00 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

I will confirm on the timeline. I appreciate the offer to skim the documents, but I have been told that there is confidential information within the documents that will need to be redacted prior to distribution. I'll get back to you.

---

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, November 13, 2018 2:31 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Hi Tim,

Does this also include the time limit - August 1, 2017 to September 4, 2018? I'm open to considering any further parameters you have. Our intention was not to require the production of 26k+ documents. If it is easiest for Nationwide to just produce the whole batch, however, we can handle skimming through them.

Thanks,
Alexis

---

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 2:59 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

Turns out that search is just on "homesource" and not "home source". Are you sure you don't have any further limiting parameters?

---

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 2:02 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Great, thank you.

---

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 2:00 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

Good question. I asked that he search for "HomeSource" and "Home Source". I don't know how he effectuated that search. I'll check.

---

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 1:54 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

This only includes documents where "Home Source" was together, correct? Not emails that contained the terms "home" and "source" separately? Duplicates can also be excluded (it's not necessary to include every email in the chain). This is a surprising large number (to me). If it is still that many pertaining to HomeSource/"Home Source", then we can handle the production. If we need to discuss the logistics of that further, let me know.

7

Thank you.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 1:26 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

I have been told by IT that it is 26,000+ documents/emails. I have requested them all, but do you want a more narrow search?

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 1:24 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

I am following up on this matter, because I do not believe that we received any discovery responses from Nationwide. Please clarify when those responses will be received.

Thank you,
Alexis

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908 | **E**: alexis.arena@flastergreenberg.com

**Email** | **Bio** | **Offices** | **V-card** | **LinkedIn** | **Twitter**

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, September 25, 2018 10:39 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

Good speaking with you as well.

We discussed narrowing request No. 1 to request only documents during August 1, 2017 to September 4, 2018 time frame. (The NDA was signed around August 2017 and the Amended Complaint was filed on 9/4/18.) I suggested that Nationwide simply run a search for "HomeSource" or "Home Source" to gather responsive documents.

You indicated that Nationwide is amenable to responding to Request No. 5. Regarding Request No. 8, I suggested that you briefly investigate whether Nationwide has any documents or information responsive to this request. If after a good faith investigation, Nationwide does not, then that is a sufficient response.

8

Regarding the remaining requests, we agreed to have another conversation on October 11th at 10am (after RWS's responses to our discovery requests are due on October 10).  I further agreed to give Nationwide an extension until October 26, 2018 to respond to our requests.

I look forward to speaking with you on October 11.


**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908 | **E**: alexis.arena@flastergreenberg.com

Email | Bio | Offices | V-card | LinkedIn | Twitter

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, September 25, 2018 10:23 AM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** Discovery

Alexis,

Good speaking with you. Please send me a copy of your revised discovery position so that I can respond.  Thanks, Tim.



Timothy Nerhood
Hendrick Bryant Nerhood Sanders & Otis, LLP
723 Coliseum Drive, Suite 101
Winston Salem, NC 27106-5326
Phone:  (336) 723-7200
Fax:  (336) 723-7201
tnerhood@hendricklawfirm.com

PRIVILEGED AND CONFIDENTIAL

This electronic message and any attachments are the confidential property of the sender. The information is intended only for use of the person to whom it was addressed. Any other interception, copying, accessing or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward the message without permission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege that may attach to this communication. Thank you for your cooperation.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

# Timothy Nerhood

**From:** Timothy Nerhood
**Sent:** Monday, November 26, 2018 11:42 AM
**To:** 'Arena, Alexis'
**Subject:** RE: Discovery

Thanks for the follow up. The search was actually just 2018 YTD. I was trying to set up a meeting with IT to discuss options, but I dropped everything last week while enjoying Thanksgiving. I'll reinitiate the efforts. Thanks, Tim.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 26, 2018 11:11 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Hi Tim,

Just following up on this. Hope you had a good holiday.

Thanks,
Alexis

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, November 13, 2018 3:00 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

I will confirm on the timeline. I appreciate the offer to skim the documents, but I have been told that there is confidential information within the documents that will need to be redacted prior to distribution. I'll get back to you.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, November 13, 2018 2:31 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Hi Tim,

Does this also include the time limit - August 1, 2017 to September 4, 2018? I'm open to considering any further parameters you have. Our intention was not to require the production of 26k+ documents. If it is easiest for Nationwide to just produce the whole batch, however, we can handle skimming through them.

Thanks,
Alexis

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 2:59 PM

**To:** Arena, Alexis <<Alexis.Arena@flastergreenberg.com>>
**Subject:** RE: Discovery

Turns out that search is just on "homesource" and not "home source". Are you sure you don't have any further limiting parameters?

---

**From:** Arena, Alexis <<Alexis.Arena@flastergreenberg.com>>
**Sent:** Monday, November 12, 2018 2:02 PM
**To:** Timothy Nerhood <<tnerhood@hendricklawfirm.com>>
**Subject:** RE: Discovery

Great, thank you.

---

**From:** Timothy Nerhood [<mailto:tnerhood@hendricklawfirm.com>]
**Sent:** Monday, November 12, 2018 2:00 PM
**To:** Arena, Alexis <<Alexis.Arena@flastergreenberg.com>>
**Subject:** RE: Discovery

Good question. I asked that he search for "HomeSource" and "Home Source". I don't know how he effectuated that search. I'll check.

---

**From:** Arena, Alexis <<Alexis.Arena@flastergreenberg.com>>
**Sent:** Monday, November 12, 2018 1:54 PM
**To:** Timothy Nerhood <<tnerhood@hendricklawfirm.com>>
**Subject:** RE: Discovery

This only includes documents where "Home Source" was together, correct? Not emails that contained the terms "home" and "source" separately? Duplicates can also be excluded (it's not necessary to include every email in the chain). This is a surprising large number (to me). If it is still that many pertaining to HomeSource/"Home Source", then we can handle the production. If we need to discuss the logistics of that further, let me know.

Thank you.

---

**From:** Timothy Nerhood [<mailto:tnerhood@hendricklawfirm.com>]
**Sent:** Monday, November 12, 2018 1:26 PM
**To:** Arena, Alexis <<Alexis.Arena@flastergreenberg.com>>
**Subject:** RE: Discovery

I have been told by IT that it is 26,000+ documents/emails. I have requested them all, but do you want a more narrow search?

---

**From:** Arena, Alexis <<Alexis.Arena@flastergreenberg.com>>
**Sent:** Monday, November 12, 2018 1:24 PM
**To:** Timothy Nerhood <<tnerhood@hendricklawfirm.com>>
**Subject:** RE: Discovery

Timothy,

I am following up on this matter, because I do not believe that we received any discovery responses from Nationwide. Please clarify when those responses will be received.

Thank you,
Alexis

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908| **E:** alexis.arena@flastergreenberg.com

Email | Bio | Offices | V-card | LinkedIn | Twitter

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

---

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, September 25, 2018 10:39 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

Good speaking with you as well.

We discussed narrowing request No. 1 to request only documents during August 1, 2017 to September 4, 2018 time frame.  (The NDA was signed around August 2017 and the Amended Complaint was filed on 9/4/18).  I suggested that Nationwide simply run a search for "HomeSource" or "Home Source" to gather responsive documents.

You indicated that Nationwide is amenable to responding to Request No. 5.  Regarding Request No. 8, I suggested that you briefly investigate whether Nationwide has any documents or information responsive to this request.  If after a good faith investigation, Nationwide does not, then that is a sufficient response.

Regarding the remaining requests, we agreed to have another conversation on October 11th at 10am (after RWS's responses to our discovery requests are due on October 10).  I further agreed to give Nationwide an extension until October 26, 2018 to respond to our requests.

I look forward to speaking with you on October 11.

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908| **E:** alexis.arena@flastergreenberg.com

Email | Bio | Offices | V-card | LinkedIn | Twitter

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

---

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, September 25, 2018 10:23 AM

**To:** Arena, Alexis <<u>Alexis.Arena@flastergreenberg.com</u>>
**Subject:** Discovery

Alexis,

Good speaking with you. Please send me a copy of your revised discovery position so that I can respond. Thanks, Tim.



Timothy Nerhood
Hendrick Bryant Nerhood Sanders & Otis, LLP
723 Coliseum Drive, Suite 101
Winston Salem, NC 27106-5326
Phone: (336) 723-7200
Fax: (336) 723-7201
<u>tnerhood@hendricklawfirm.com</u>

PRIVILEGED AND CONFIDENTIAL

This electronic message and any attachments are the confidential property of the sender. The information is intended only for use of the person to whom it was addressed. Any other interception, copying, accessing or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward the message without permission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege that may attach to this communication. Thank you for your cooperation.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**Timothy Nerhood**

---

| | |
|---|---|
| **From:** | Timothy Nerhood |
| **Sent:** | Tuesday, November 13, 2018 3:00 PM |
| **To:** | 'Arena, Alexis' |
| **Subject:** | RE: Discovery |

I will confirm on the timeline. I appreciate the offer to skim the documents, but I have been told that there is confidential information within the documents that will need to be redacted prior to distribution. I'll get back to you.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, November 13, 2018 2:31 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Hi Tim,

Does this also include the time limit - August 1, 2017 to September 4, 2018? I'm open to considering any further parameters you have. Our intention was not to require the production of 26k+ documents. If it is easiest for Nationwide to just produce the whole batch, however, we can handle skimming through them.

Thanks,
Alexis

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 2:59 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

Turns out that search is just on "homesource" and not "home source". Are you sure you don't have any further limiting parameters?

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 2:02 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Great, thank you.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 2:00 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

Good question. I asked that he search for "HomeSource" and "Home Source". I don't know how he effectuated that search. I'll check.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 1:54 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

This only includes documents where "Home Source" was together, correct? Not emails that contained the terms "home" and "source" separately? Duplicates can also be excluded (it's not necessary to include every email in the chain). This is a surprising large number (to me). If it is still that many pertaining to HomeSource/"Home Source", then we can handle the production. If we need to discuss the logistics of that further, let me know.

Thank you.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 1:26 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

I have been told by IT that it is 26,000+ documents/emails. I have requested them all, but do you want a more narrow search?

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 1:24 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

I am following up on this matter, because I do not believe that we received any discovery responses from Nationwide. Please clarify when those responses will be received.

Thank you,
Alexis

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908 | **E**: alexis.arena@flastergreenberg.com

**Email | Bio | Offices | V-card | LinkedIn | Twitter**

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, September 25, 2018 10:39 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

Good speaking with you as well.

We discussed narrowing request No. 1 to request only documents during August 1, 2017 to September 4, 2018 time frame.  (The NDA was signed around August 2017 and the Amended Complaint was filed on 9/4/18).  I suggested that Nationwide simply run a search for "HomeSource" or "Home Source" to gather responsive documents.

You indicated that Nationwide is amenable to responding to Request No. 5.  Regarding Request No. 8, I suggested that you briefly investigate whether Nationwide has any documents or information responsive to this request.  If after a good faith investigation, Nationwide does not, then that is a sufficient response.

Regarding the remaining requests, we agreed to have another conversation on October 11th at 10am (after RWS's responses to our discovery requests are due on October 10).  I further agreed to give Nationwide an extension until October 26, 2018 to respond to our requests.

I look forward to speaking with you on October 11.

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908 | **E:** alexis.arena@flastergreenberg.com

**Email** | **Bio** | **Offices** | **V-card** | **LinkedIn** | **Twitter**

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, September 25, 2018 10:23 AM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** Discovery

Alexis,

Good speaking with you. Please send me a copy of your revised discovery position so that I can respond.  Thanks, Tim.



Timothy Nerhood
Hendrick Bryant Nerhood Sanders & Otis, LLP
723 Coliseum Drive, Suite 101
Winston Salem, NC 27106-5326
Phone:  (336) 723-7200
Fax:  (336) 723-7201
tnerhood@hendricklawfirm.com

PRIVILEGED AND CONFIDENTIAL

This electronic message and any attachments are the confidential property of the sender. The information is intended only for use of the person to whom it was addressed. Any other interception, copying, accessing or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward the message without permission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege that may attach to this communication. Thank you for your cooperation.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**Timothy Nerhood**

| | |
|---|---|
| **From:** | Timothy Nerhood |
| **Sent:** | Monday, November 12, 2018 2:59 PM |
| **To:** | 'Arena, Alexis' |
| **Subject:** | RE: Discovery |

Turns out that search is just on "homesource" and not "home source". Are you sure you don't have any further limiting parameters?

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 2:02 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Great, thank you.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 2:00 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

Good question. I asked that he search for "HomeSource" and "Home Source". I don't know how he effectuated that search. I'll check.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 1:54 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

This only includes documents where "Home Source" was together, correct? Not emails that contained the terms "home" and "source" separately? Duplicates can also be excluded (it's not necessary to include every email in the chain). This is a surprising large number (to me). If it is still that many pertaining to HomeSource/"Home Source", then we can handle the production. If we need to discuss the logistics of that further, let me know.

Thank you.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 1:26 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

I have been told by IT that it is 26,000+ documents/emails. I have requested them all, but do you want a more narrow search?

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 1:24 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

19

Timothy,

I am following up on this matter, because I do not believe that we received any discovery responses from Nationwide. Please clarify when those responses will be received.

Thank you,
Alexis

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908| **E:** alexis.arena@flastergreenberg.com

**Email** | **Bio** | **Offices** | **V-card** | **LinkedIn** | **Twitter**

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, September 25, 2018 10:39 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

Good speaking with you as well.

We discussed narrowing request No. 1 to request only documents during August 1, 2017 to September 4, 2018 time frame. (The NDA was signed around August 2017 and the Amended Complaint was filed on 9/4/18.) I suggested that Nationwide simply run a search for "HomeSource" or "Home Source" to gather responsive documents.

You indicated that Nationwide is amenable to responding to Request No. 5. Regarding Request No. 8, I suggested that you briefly investigate whether Nationwide has any documents or information responsive to this request. If after a good faith investigation, Nationwide does not, then that is a sufficient response.

Regarding the remaining requests, we agreed to have another conversation on October 11th at 10am (after RWS's responses to our discovery requests are due on October 10). I further agreed to give Nationwide an extension until October 26, 2018 to respond to our requests.

I look forward to speaking with you on October 11.

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908| **E:** alexis.arena@flastergreenberg.com

**Email** | **Bio** | **Offices** | **V-card** | **LinkedIn** | **Twitter**

20

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, September 25, 2018 10:23 AM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** Discovery

Alexis,

Good speaking with you. Please send me a copy of your revised discovery position so that I can respond.  Thanks, Tim.



Timothy Nerhood
Hendrick Bryant Nerhood Sanders & Otis, LLP
723 Coliseum Drive, Suite 101
Winston Salem, NC 27106-5326
Phone:  (336) 723-7200
Fax:  (336) 723-7201
tnerhood@hendricklawfirm.com

PRIVILEGED AND CONFIDENTIAL

This electronic message and any attachments are the confidential property of the sender. The information is intended only for use of the person to whom it was addressed. Any other interception, copying, accessing or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward the message without permission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege that may attach to this communication. Thank you for your cooperation.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

# Timothy Nerhood

| | |
|---|---|
| **From:** | Timothy Nerhood |
| **Sent:** | Monday, November 12, 2018 2:00 PM |
| **To:** | Arena, Alexis |
| **Subject:** | RE: Discovery |

Good question. I asked that he search for "HomeSource" and "Home Source". I don't know how he effectuated that search. I'll check.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 1:54 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

This only includes documents where "Home Source" was together, correct? Not emails that contained the terms "home" and "source" separately? Duplicates can also be excluded (it's not necessary to include every email in the chain). This is a surprising large number (to me). If it is still that many pertaining to HomeSource/"Home Source", then we can handle the production. If we need to discuss the logistics of that further, let me know.

Thank you.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Monday, November 12, 2018 1:26 PM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

I have been told by IT that it is 26,000+ documents/emails. I have requested them all, but do you want a more narrow search?

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 1:24 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

I am following up on this matter, because I do not believe that we received any discovery responses from Nationwide. Please clarify when those responses will be received.

Thank you,
Alexis

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908 | **E:** alexis.arena@flastergreenberg.com

Email | Bio | Offices | V-card | LinkedIn | Twitter

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, September 25, 2018 10:39 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

Good speaking with you as well.

We discussed narrowing request No. 1 to request only documents during August 1, 2017 to September 4, 2018 time frame.  (The NDA was signed around August 2017 and the Amended Complaint was filed on 9/4/18).  I suggested that Nationwide simply run a search for "HomeSource" or "Home Source" to gather responsive documents.

You indicated that Nationwide is amenable to responding to Request No. 5.  Regarding Request No. 8, I suggested that you briefly investigate whether Nationwide has any documents or information responsive to this request.  If after a good faith investigation, Nationwide does not, then that is a sufficient response.

Regarding the remaining requests, we agreed to have another conversation on October 11th at 10am (after RWS's responses to our discovery requests are due on October 10).  I further agreed to give Nationwide an extension until October 26, 2018 to respond to our requests.

I look forward to speaking with you on October 11.

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
D: 215.279.9908 | E: alexis.arena@flastergreenberg.com

Email | Bio | Offices | V-card | LinkedIn | Twitter

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, September 25, 2018 10:23 AM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** Discovery

Alexis,

Good speaking with you. Please send me a copy of your revised discovery position so that I can respond.  Thanks, Tim.



Timothy Nerhood
Hendrick Bryant Nerhood Sanders & Otis, LLP
723 Coliseum Drive, Suite 101
Winston Salem, NC 27106-5326
Phone:  (336) 723-7200
Fax:  (336) 723-7201
tnerhood@hendricklawfirm.com

PRIVILEGED AND CONFIDENTIAL

This electronic message and any attachments are the confidential property of the sender. The information is intended only for use of the person to whom it was addressed. Any other interception, copying, accessing or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward the message without permission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege that may attach to this communication. Thank you for your cooperation.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**Timothy Nerhood**

---

| | |
|---|---|
| **From:** | Timothy Nerhood |
| **Sent:** | Monday, November 12, 2018 1:26 PM |
| **To:** | Arena, Alexis |
| **Subject:** | RE: Discovery |

I have been told by IT that it is 26,000+ documents/emails.  I have requested them all, but do you want a more narrow search?

---

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Monday, November 12, 2018 1:24 PM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

I am following up on this matter, because I do not believe that we received any discovery responses from Nationwide.  Please clarify when those responses will be received.

Thank you,
Alexis

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D:** 215.279.9908 | **E:** alexis.arena@flastergreenberg.com

**Email** l **Bio** l **Offices** l **V-card** l **LinkedIn** l **Twitter**

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

---

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, September 25, 2018 10:39 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

Good speaking with you as well.

We discussed narrowing request No. 1 to request only documents during August 1, 2017 to September 4, 2018 time frame.  (The NDA was signed around August 2017 and the Amended Complaint was filed on 9/4/18)  I suggested that Nationwide simply run a search for "HomeSource" or "Home Source" to gather responsive documents.

You indicated that Nationwide is amenable to responding to Request No. 5.  Regarding Request No. 8, I suggested that you briefly investigate whether Nationwide has any documents or information responsive to this request.  If after a good faith investigation, Nationwide does not, then that is a sufficient response.

25

Regarding the remaining requests, we agreed to have another conversation on October 11th at 10am (after RWS's responses to our discovery requests are due on October 10).  I further agreed to give Nationwide an extension until October 26, 2018 to respond to our requests.

I look forward to speaking with you on October 11.


**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908 | **E**: alexis.arena@flastergreenberg.com

**Email** | **Bio** | **Offices** | **V-card** | **LinkedIn** | **Twitter**

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, September 25, 2018 10:23 AM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** Discovery

Alexis,

Good speaking with you. Please send me a copy of your revised discovery position so that I can respond.  Thanks, Tim.



Timothy Nerhood
Hendrick Bryant Nerhood Sanders & Otis, LLP
723 Coliseum Drive, Suite 101
Winston Salem, NC 27106-5326
Phone:  (336) 723-7200
Fax:  (336) 723-7201
tnerhood@hendricklawfirm.com

PRIVILEGED AND CONFIDENTIAL

This electronic message and any attachments are the confidential property of the sender. The information is intended only for use of the person to whom it was addressed. Any other interception, copying, accessing or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward the message without permission. There is no intent on the part

of the sender to waive any privilege, including the attorney-client privilege that may attach to this communication. Thank you for your cooperation.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**Timothy Nerhood**

| | |
|---|---|
| **From:** | Timothy Nerhood |
| **Sent:** | Friday, September 28, 2018 10:23 AM |
| **To:** | 'Arena, Alexis' |
| **Subject:** | RE: Discovery |

Alexis,

I'm just following up on my request for a copy of the NDA.  NMG never received a copy of it when it was signed.  Thanks, Tim.

**From:** Timothy Nerhood
**Sent:** Tuesday, September 25, 2018 10:50 AM
**To:** 'Arena, Alexis' <Alexis.Arena@flastergreenberg.com>
**Subject:** RE: Discovery

Do you have a copy of the signed NDA that you can share with me?  I never received a signed copy; I only have a proposed draft in my files.

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, September 25, 2018 10:39 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

Good speaking with you as well.

We discussed narrowing request No. 1 to request only documents during August 1, 2017 to September 4, 2018 time frame.  (The NDA was signed around August 2017 and the Amended Complaint was filed on 9/4/18).  I suggested that Nationwide simply run a search for "HomeSource" or "Home Source" to gather responsive documents.

You indicated that Nationwide is amenable to responding to Request No. 5.  Regarding Request No. 8, I suggested that you briefly investigate whether Nationwide has any documents or information responsive to this request.  If after a good faith investigation, Nationwide does not, then that is a sufficient response.

Regarding the remaining requests, we agreed to have another conversation on October 11th at 10am (after RWS's responses to our discovery requests are due on October 10).  I further agreed to give Nationwide an extension until October 26, 2018 to respond to our requests.

I look forward to speaking with you on October 11.

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
**D**: 215.279.9908 | **E:** alexis.arena@flastergreenberg.com

**Email** I **Bio** I **Offices** I **V-card** I **LinkedIn** I **Twitter**

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, September 25, 2018 10:23 AM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** Discovery

Alexis,

Good speaking with you. Please send me a copy of your revised discovery position so that I can respond. Thanks, Tim.



Timothy Nerhood
Hendrick Bryant Nerhood Sanders & Otis, LLP
723 Coliseum Drive, Suite 101
Winston Salem, NC 27106-5326
Phone: (336) 723-7200
Fax: (336) 723-7201
tnerhood@hendricklawfirm.com

PRIVILEGED AND CONFIDENTIAL

This electronic message and any attachments are the confidential property of the sender. The information is intended only for use of the person to whom it was addressed. Any other interception, copying, accessing or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward the message without permission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege that may attach to this communication. Thank you for your cooperation.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**Timothy Nerhood**

| | |
|---|---|
| **From:** | Timothy Nerhood |
| **Sent:** | Tuesday, September 25, 2018 10:50 AM |
| **To:** | 'Arena, Alexis' |
| **Subject:** | RE: Discovery |

Do you have a copy of the signed NDA that you can share with me? I never received a signed copy; I only have a proposed draft in my files.

---

**From:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Sent:** Tuesday, September 25, 2018 10:39 AM
**To:** Timothy Nerhood <tnerhood@hendricklawfirm.com>
**Subject:** RE: Discovery

Timothy,

Good speaking with you as well.

We discussed narrowing request No. 1 to request only documents during August 1, 2017 to September 4, 2018 time frame. (The NDA was signed around August 2017 and the Amended Complaint was filed on 9/4/18.) I suggested that Nationwide simply run a search for "HomeSource" or "Home Source" to gather responsive documents.

You indicated that Nationwide is amenable to responding to Request No. 5. Regarding Request No. 8, I suggested that you briefly investigate whether Nationwide has any documents or information responsive to this request. If after a good faith investigation, Nationwide does not, then that is a sufficient response.

Regarding the remaining requests, we agreed to have another conversation on October 11th at 10am (after RWS's responses to our discovery requests are due on October 10). I further agreed to give Nationwide an extension until October 26, 2018 to respond to our requests.

I look forward to speaking with you on October 11.

**Alexis Arena**
**Flaster Greenberg PC**
1835 Market St., Suite 1050, Philadelphia, PA 19103
D: 215.279.9908 | E: alexis.arena@flastergreenberg.com

Email I Bio I Offices I V-card I LinkedIn I Twitter

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

---

**From:** Timothy Nerhood [mailto:tnerhood@hendricklawfirm.com]
**Sent:** Tuesday, September 25, 2018 10:23 AM
**To:** Arena, Alexis <Alexis.Arena@flastergreenberg.com>
**Subject:** Discovery

Alexis,

Good speaking with you. Please send me a copy of your revised discovery position so that I can respond.  Thanks, Tim.



Timothy Nerhood
Hendrick Bryant Nerhood Sanders & Otis, LLP
723 Coliseum Drive, Suite 101
Winston Salem, NC 27106-5326
Phone:  (336) 723-7200
Fax:  (336) 723-7201
tnerhood@hendricklawfirm.com

PRIVILEGED AND CONFIDENTIAL

This electronic message and any attachments are the confidential property of the sender. The information is intended only for use of the person to whom it was addressed. Any other interception, copying, accessing or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward the message without permission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege that may attach to this communication. Thank you for your cooperation.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**Timothy Nerhood**

---

| | |
|---|---|
| **From:** | Timothy Nerhood |
| **Sent:** | Tuesday, September 25, 2018 10:23 AM |
| **To:** | 'alexis.arena@flastergreenberg.com' |
| **Subject:** | Discovery |

Alexis,

Good speaking with you. Please send me a copy of your revised discovery position so that I can respond. Thanks, Tim.



Timothy Nerhood
Hendrick Bryant Nerhood Sanders & Otis, LLP
723 Coliseum Drive, Suite 101
Winston Salem, NC 27106-5326
Phone: (336) 723-7200
Fax: (336) 723-7201
tnerhood@hendricklawfirm.com

PRIVILEGED AND CONFIDENTIAL

This electronic message and any attachments are the confidential property of the sender. The information is intended only for use of the person to whom it was addressed. Any other interception, copying, accessing or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward the message without permission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege that may attach to this communication. Thank you for your cooperation.

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

EXHIBIT 2
Subpoena



1835 Market Street,
Suite 1050
Philadelphia, PA 19103
(215) 279-9393
Fax: (215) 279-9394
www.flastergreenberg.com

**ALEXIS ARENA, ESQUIRE**
Direct Dial: (215) 279-9908
E-Mail: alexis.arena@flastergreenberg.com

September 12, 2018

*VIA PROCESS SERVER*
**Attn: Legal Department**
Nationwide Marketing Group, LLC
723 Coliscum Drive, Suite 101
Winston Salem, NC 27106-5326

Re: | *The HomeSource, Corp. v. Retailer Web Services, LLC*
Case No. 1:18-cv-11970-JBS-KMW

Dear Sir or Madam:

Enclosed, please find the following:

1. A subpoena to produce documents directed to Nationwide Marketing Group, LLC;
2. An Exhibit A setting forth the document requests;
3. A copy of the Amended Complaint in the above-referenced action; and
4. Exhibits A-C of the Amended Complaint.

You may serve these documents electronically via email to my attention.

Very truly yours,

Alexis Arena

Cc: *VIA EMAIL*
Matthew A. Lipman, Esq.
Monica T. Holland, Esq.
Adam Wolek, Esq.

6885115 v1

Case 1:19-mc-00006-JLW   Document 2   Filed 01/21/19   Page 72 of 141

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| | |
|---|---|
| THE HOMESOURCE, CORP. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:18-cv-11970 |
| | ) |
| RETAILER WEB SERVICES, LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Nationwide Marketing Group, LLC
        723 Coliseum Drive, Suite 101, Winston Salem, NC 27106-5326

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Exhibit A.

| Place: Lex Erwin, Esq. | Date and Time: |
|---|---|
| Erwin, Bishop, Capitano & Moss, P.A. 4521 Sharon Road, Suite 350, Charlotte, NC 28211 | 09/26/2018 5:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    09/12/2018

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | /s/ Alexis Arena |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Plaintiff

The HomeSource, Corp. , who issues or requests this subpoena, are:

Alexis Arena, 1810 Chapel Ave. West, Cherry Hill, NJ 08002;; alexis.arena@flastergreenberg.com; 215-279-9908

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Exhibit A

## SUBPOENA DUCES TECUM

This Subpoena seeks documents, information and records from Nationwide Marketing Group, LLC.

## Definitions

1. "You" refers to Nationwide Marketing Group, LLC, any of its predecessors and successors, and all of its past, present, or future owners, members, officers, directors, shareholders, affiliates, owners, subsidiaries, parents, sister companies, employees, representatives, lawyers, agents, and others acting on its behalf.

2. "Defendant", or "RWS", when used herein shall mean Retailer Web Services, LLC, as well as its agents, employees, assigns, heirs, successors, officers, directors, predecessors and representatives (including, but not limited to, Jim Kane and Jennie Gilbert) and all other persons acting or purporting to act on their behalf or at their direction or control.

3. "Plaintiff" or "HomeSource" when used herein shall mean The HomeSource, Corp., as well as its agents, employees, assigns, heirs, successors, predecessors and representatives and all other persons acting or purporting to act on its behalf or at its direction or control.

4. "GridIron" when used herein shall mean GridIron Capital, as well as its agents, employees, assigns, heirs, successors, predecessors and representatives and all other persons acting or purporting to act on its behalf or at its direction or control.

5. "ADC" when used herein shall mean Appliance Dealers Cooperative, as well as its agents, employees, assigns, heirs, successors, predecessors and representatives and all other persons acting or purporting to act on its behalf or at its direction or control.

1

6.      "Litigation" or "this Action" means the above-captioned action.

7.      "Amended Complaint" when used herein shall mean the First Amended Complaint filed by Plaintiff in this Litigation.

8.      "Date" when used herein shall mean the exact day, month and year if ascertainable, or if not, the best approximation thereof in relation to other events.

9.      "Relevant Time Period" when used herein shall mean the period from January 1, 2017, to the date these Interrogatories are answered, unless specifically stated otherwise.

10.     "Documents" when used herein shall mean all written, printed, typed, computerized, computer-generated, computer-stored, tape recorded, and visually or orally reproduced material of any kind, whether or not privileged, and includes, but is not limited to, papers, writings, memoranda, correspondence, stenographic, handwritten or other notes, books, pamphlets, minutes, contracts, agreements, subpoenas, inter-office and intra-office communications, bulletins, circulars, procedures, diaries, records or notes of telephone conversations, bills, orders, receipts, charts, schedules, entries, prints, worksheets, lists, catalogues, computer printouts, e-mail, representations, reports, drawings, sketches, pictures, photographs, tape or other recordings, computer discs, films, and any tangible items or things of written, readable, graphic, audible or visual materials of any kind or character including data stored on magnetic media for audible or computer use or for word processing purposes, whether handwritten, typed, xeroxed, photostated, printed, duplicated, reproduced, recorded, videotaped, photographed, copied, microfilmed, micro-carded or transcribed by any means including, without limitation, each interim as well as final draft and any revision.

11.     "Communications" when used herein shall mean the oral, textual or other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2

12. "Any" and/or "all" shall mean any and all.

13. "Each" shall mean each and every.

14. "And" as well as "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the Interrogatory all responses that otherwise might be construed outside of its scope.

15. As used herein, any reference to the singular shall include the plural, and vice versa, to bring within the scope of the Interrogatory information that might otherwise be construed outside of its scope. The use of any masculine or feminine pronoun includes both the masculine and the feminine.

16. "Concerning" means directly or indirectly, in whole or in part, referring to, relating to, connected with, commenting on, impinging or impacting upon, supporting, contradicting, establishing, affecting, prepared in connection with, responding to, analyzing, reflecting or constituting.

## Instructions

This Subpoena commands You to produce the following documents and to permit inspection and copying of them. In lieu of producing them for inspection and copying you may, except as otherwise indicated, either: (a) convert the requested documents to word-searchable PDFs and email them to the undersigned attorney on or before the date required by the subpoena; or (b) deliver paper copies of the requested documents to the undersigned by means that ensure receipt on or before the date required by the subpoena (e.g., FedEx).

6880839 v2

MATT corse
Louw
Per
RWS

## Documents to Produce

1. All Documents and Communications exchanged between You and RWS Concerning (a) HomeSource; (b) the newsletter attached to HomeSource's Amended Complaint as Exhibit A; (c) this Action and/or (d) the allegations set forth in the Amended Complaint.

2. All Documents and Communications Concerning Your contracts, agreements, or business relationship with RWS.

3. All Documents and Communications Concerning any person(s) or entit(ies) with an ownership interest in RWS, including but not limited to all Documents and Communications Concerning whether Nationwide has any direct or indirect ownership interest in RWS, and all Documents and Communications related to Local Retail Solutions, LLC.

4. All Documents and Communications Concerning the relationship between Local Retail Solutions, LLC, and RWS.

5. All Documents and Communications concerning the non-disclosure agreement ("NDA") that You entered into with HomeSource, and concerning whether information that You received from HomeSource pursuant to that NDA was ever provided to RWS's employees, directors, executives and/or owners.

6. All Documents Concerning whether any of Your employees, directors, executives, or owners used to be employed or affiliated with RWS.

7. All Documents Concerning whether any of Your former employees, directors, executives, or owners are now employed or affiliated with RWS.

8. All Documents and Communications Concerning Your knowledge of the DoS, DDoS, hacking attacks, and any other interference or access attempts of HomeSource's websites or its customers' websites, as set forth in the Amended Complaint.

4

9.    All Documents sufficient to identify any of Your parent and subsidiary companies.

In responding to this subpoena duces tecum, You must produce any requested Documents that are in Your possession, custody, or control.

5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| THE HOMESOURCE, CORP. Plaintiff, vs. RETAILER WEB SERVICES, LLC and JOHN DOES 1-3, Defendants. | Case No. 1:18-cv-11970 |
|---|---|

### FIRST AMENDED COMPLAINT

1.      Plaintiff The HomeSource, Corp. ("HomeSource") hereby amends its Complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) to assert additional claims against defendant John Does 1-3. HomeSource does not yet know the identity of John Does 1-3 (or whether they share the same identity), but will seek this information through discovery.

2.      HomeSource filed its initial complaint against defendant Retailer Web Services, LLC ("RWS") for false advertising, defamation, tortious interference with commercial relationships, and unfair competition. Both HomeSource and RWS provide competitive technology services, including but not limited to operating websites for the same types of retail store customers.

3.      In late 2017, HomeSource launched a product that directly competes with RWS's product and began to quickly acquire RWS customers. On July 16, 2018, for example, HomeSource moved approximately 200 customers from RWS's platform to HomeSource's platform.

4.      The same day, RWS began a smear campaign designed to unfairly disparage HomeSource and deceive its customers. RWS published false and misleading statements about

6873568 v1

HomeSource in newsletters distributed via email over the next few days to HomeSource's customers and potential customers. RWS further contacted HomeSource's customers and potential customers by telephone regarding the same issues.

5.      On or about July 19, 2018, RWS misrepresented security vulnerabilities of HomeSource's data and intellectual property to third parties. RWS emailed HomeSource notice of a "security hole" in HomeSource's software at 11:59 p.m., and then uploaded a video at 1:33 a.m. just hours later advertising the "security hole" to the public.

6.      On July 20, 2018, RWS sent out the newsletter attached as Exhibit A to the parties' customers and potential customers. This lawsuit followed on July 23.

7.      Beginning on or about August 9, 2018, John Doe 1 (hereinafter referred to as "Cyber-Attack Doe"), engaged in a series of denial of service ("DoS") and/or distributed denial of service ("DDoS") attacks on HomeSource's customers' websites, in an apparent effort to slow down, interrupt, and/or crash those websites.

8.      HomeSource was able to successfully block these attacks within a few days.

9.      Immediately thereafter (after the close of business on August 13), John Doe 2 (hereinafter referred to as "Hacking Doe") attempted to "hack" into HomeSource's platform, or to gain unauthorized access to HomeSource's customer data. On August 13, 2018, at 9:02 pm, RWS's CEO, Jim Kane, sent HomeSource an email notifying HomeSource of the hacking attempt, stating:

"We have observed that the following websites...which we believe to be operated by HomeSource, appear to have been compromised by a third party (see attached screen shots). We wanted to let you know as a professional courtesy in case any customer information has been compromised."

10. Hacking Doe's attack occurred the night before HomeSource had a meeting to show a new potential customer (and current large customer of RWS) its platform.

11. The only HomeSource customers targeted by Hacking Doe appear to be HomeSource customers that are former RWS customers. HomeSource possesses evidence that Hacking Doe was working from a specific, non-public list of former RWS customers.

12. To complete the attack, Hacking Doe manually entered information that was only available to RWS and HomeSource. Specifically, Hacking Doe entered in the website addresses and IP addresses of customers that had switched from RWS to HomeSource, even where that information was not publicly available.

13. On or about August 18, 2018, HomeSource was notified that John Doe 3 (hereinafter "Fake-Customer Doe") was sending emails to HomeSource's customers complaining about HomeSource's website functionality. A copy of one such email (from misc@aol.com) is attached hereto as Exhibit B.

14. Following the receipt of the email attached hereto as Exhibit B, HomeSource investigated the Internet activity of Fake-Customer Doe and uncovered evidence that Fake-Customer Doe's claims in Exhibit B are false. HomeSource also uncovered that Fake-Customer Doe went to great lengths to hide its digital fingerprints – something a normal consumer would ordinarily not do or know how to do.

15. On or about August 27, 2018, Cyber-Attack Doe launched another set of DoS and/or DDoS attacks through the use of bots, using a different method.

16. HomeSource also shut down these attacks, using a different method.

17. In doing so, and as set forth more fully below, HomeSource observed an exponentially disproportionate amount of website traffic coming from Scottsdale, Arizona. This

traffic originated from the location set forth in Exhibit C, which appears to be within a mile of RWS's office.

18.     HomeSource brings this first amended complaint against Cyber-Attack Doe and Hacking Doe for tortious interference with commercial relationships and violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. HomeSource asserts an additional claim for tortious interference with commercial relationships against Fake-Customer Doe.

19.     As a result of RWS's and John Doe 1-3's unlawful actions, HomeSource has lost customers and its reputation has been unfairly damaged in an amount to be determined at trial.

## PARTIES

20.     Plaintiff HomeSource is a New Jersey corporation with its principal place of business at 420 Ganttown Road, Sewell, NJ 08080.

21.     Defendant RWS is an Arizona limited liability company with a principal place of business at 15615 N. 71ST Street, Suite 205, Scottsdale, AZ 85254.

22.     Defendant RWS's statutory registered agent is: Kingsley Law Firm PLC, 14362 N. Frank Lloyd Wright BLVD, #1000, Scottsdale, AZ 85260.

23.     At this time, HomeSource does not know the identity of the defendant Does. When that information is known, HomeSource will amend its pleading to identify that person/entity and any other person/entity associated with that person.

24.     HomeSource attempted to "trace" the location of the defendant Does without the benefit of any discovery by analyzing the volume and origin of all web traffic since RWS sent the newsletter and emails in mid July 2018.

25.     HomeSource uncovered over 114,000 requests to access/search their customers' websites from Arizona, and approximately 38,000 requests within a mile of RWS's main office.

4

6873568 v1

26.   On average, many of HomeSource's customers' websites see 150-300 users per day.

27.   HomeSource does not have any information yet confirming the location of Hacking Doe or Fake-Customer Doe.

## JURISDICTION AND VENUE

28.   This Court has federal question jurisdiction over HomeSource's federal claims pursuant to 28 U.S.C. §§ 1331, 1338(a).

29.   This court has personal jurisdiction over defendant RWS because RWS is engaged in the systematic and continuous conduct of business in the State of New Jersey. RWS's conduct in connection with the State of New Jersey required it reasonably to anticipate that it would be subject to the jurisdiction of the courts in the State of New Jersey.

30.   Upon information and belief, this court has personal jurisdiction over defendant Does because Does expressly aimed tortious conduct at HomeSource, a New Jersey corporation, via the internet such that defendant Does could reasonably anticipate being haled into district court in New Jersey due to their tortious conduct.

31.   Venue in the District of New Jersey is proper under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### A.   HomeSource and RWS

32.   HomeSource provides software and data solutions for retailers and manufacturers.

33.   HomeSource's proprietary software aggregates large amounts of data – including item numbers, product specs, training videos, and more – into one single, usable platform, which allows retailers and manufacturers to streamline various processes such as printing customized quotes, providing accurate shipping times, and real-time updating of sizes, colors, and options so dealers always have current and accurate information at their fingertips.

34. Upon information and belief, RWS offers a competitive tool called "RetailDeck/WebFronts."

35. Recently, GridIron Capital ("GridIron"), and its subsidiary Nationwide Marketing Group ("Nationwide"), considered investing in HomeSource, and all three parties entered into a non-disclosure agreement ("NDA").

36. Through the due diligence process, GridIron and Nationwide acquired a great deal of sensitive, proprietary information about HomeSource, its software, financial reports, and legal history.

37. GridIron and Nationwide ended up not investing in HomeSource, but they did invest in RWS, according to a press release from February 24, 2018.

38. Recently, several companies, including Appliance Dealers Cooperative ("ADC") and its members, have switched from using RWS's "RetailDeck/WebFronts" platform to using HomeSource's platform.

**B.      RWS's False and Misleading Advertising and Tortious Interference**

39. On or about July 20, 2018, RWS's CEO Jim Kane and COO Jennie Gilbert emailed a newsletter to HomeSource's customers and potential customers which contained materially false and misleading statements about HomeSource. *See* July 20th Newsletter, attached as Exhibit A.

40. Under the heading, "Has HomeSource ever done anything like this before?", RWS stated, "The White family, owners of HomeSource and similar other businesses, appear to have a history of their business relationships ending in lawsuits against them. They were found guilty of making **negligent misrepresentations about the capabilities of their software in a federal lawsuit** (Civil Action NO. 3:12-CV-0090)."

41.    The text "Civil Action NO. 3:12-CV-0090" contains a hyperlink to Judge Graham Mullen's Order ("Graham Order") on a motion for attorney's fees in the case of *Furniture Distributors, Inc. v. Software Support-PMW, Inc.* ("Furniture Lawsuit").

42.    HomeSource was not a party in the Furniture Lawsuit and was not found "guilty" of making negligent misrepresentations about the capability of their software.

43.    No member of the White family was a party in the Furniture Lawsuit, and no member of the White family was found "guilty" of making negligent misrepresentations about the capability of their software.

44.    RWS further misrepresented: "The judge later deemed the counter-claims they alleged along the way 'totally meritless' and ordered them to pay Furniture Distributors, Inc. fifty thousand dollars to reimburse attorney fees in addition to the four hundred fifty thousand dollars already awarded them at trial."

45.    RWS's use of "they" implies that HomeSource and the White family filed these counterclaims, but once again, they were not parties to the lawsuit, and it was actually Software Support-PMW, Inc. who filed these counterclaims in the action.

46.    The Graham Order does not mention HomeSource or the White family at all.

47.    RWS's newsletter misleadingly and falsely implies that HomeSource and/or its owners were found "guilty" of negligent misrepresentations, but they are not even parties to this lawsuit, and the Graham Order deals with a motion for attorney's fees.

48.    RWS goes on to state in the newsletter: "Despite the ruling, **Furniture Distributors Inc sued Homesource again when Homesource failed to make any of the payments ordered** (Case 3:15-CV-00313)."

49.    The text "Case 3:15-CV-00313" contains a hyperlink to a Complaint filed in the United States District Court for the Western District of North Carolina, *Furniture Distributors,*

7

*Inc. v. James R. White, Jr.; James R. White, Sr.; Phyllis M. White; Gregory L. White; Courtney Murnane; Software-Support PMW, Inc.; The Homesource, Corp.; BBJ Corp., and Centerspec, LLC.*

50.     RWS falsely states that HomeSource was sued for a second time by Furniture Distributors, Inc., but HomeSource was not a party to the original Furniture Lawsuit.

51.     RWS falsely states that HomeSource failed to make any of the payments ordered, but HomeSource was not ordered to make any payments and it was not a party to the prior lawsuit.

52.     RWS misrepresented that HomeSource failed to make payments in order to intentionally disparage HomeSource's business and damages its relationship with its customers and potential customers.

53.     RWS further misrepresented that Martin Salas was a consultant hired by HomeSource, but HomeSource never hired or entered into any contract with Martin Salas directly.

54.     Upon information and belief, after HomeSource filed the initial complaint in this action, RWS continued to make false, misleading, and/or defamatory statements about HomeSource to HomeSource's customers, potential customers, and third parties.

**C.     RWS Misrepresented Security Vulnerabilities and Tried to Pose as a Customer to Acquire Access to HomeSource's Systems**

55.     On July 19, 2018, at 11:58 p.m., Jim Kane, CEO of RWS, emailed HomeSource and Ken Miele, of ADC, to point out a potential security hole and vulnerability in HomeSource's systems.

8

56.     Less than two hours later, RWS emailed the July 20th Newsletter to

HomeSource's customers which states: "Our investigation unearthed a possible major security

concern with HomeSource sites." *See* Exhibit A.

57.     The July 20th Newsletter contained a link to a short video where Jim Kane

explains how he believes one could hack into HomeSource's system, and he provides the steps

one could take in order to do it.

58.     The video misrepresents the security of customers' files and alleges that they are

publicly available, when in fact, HomeSource does not store customer information in this

"bucket" or online folder.

59.     Upon information and belief, an employee at RWS left a voicemail for

HomeSource in which he posed as a potential customer named Tony Bosco, who claimed to be

opening a store for furniture and appliances called Kensington Appliance and Furniture, in order

to deceive HomeSource and gain access to their data and methods.

60.     Upon information and belief, although "Tony Bosco" alleged that he was from the

suburbs of Pittsburgh, his phone number traced back to an RWS number.

## D.     Cyber-Attack Doe Launched DoS and/or DDoS Attacks against HomeSource's Customers' Websites

61.     In 2018, HomeSource moved hundreds of customers from RWS's platform to

HomeSource's platform.

62.     These customers are predominantly local retailers that sell appliances, electronics,

and furniture through a brick and mortar store and a website.

63.     HomeSource provides these customers with e-commerce solutions for their

websites through its pricing-lookup tool and software.

9

64.     Upon information and belief, RWS has delayed and/or ignored requests from RWS's former/current customers to have their domains released so they can be transferred to HomeSource's platform.

65.     Beginning in August 2018, Cyber-Attack Doe deployed several DoS and DDoS attacks through the use of bots and/or programs that only targeted HomeSource's customers who also used to be customers of RWS.

66.     In these DoS and DDoS attacks, the bots and/or programs would continually view the websites and run hundreds and thousands of searches in an effort to overload HomeSource's computer systems and software and crash the websites.

67.     Upon information and belief, HomeSource has reason to believe that Cyber-Attack Doe's attacks were and are coming out of Scottsdale, Arizona, the same location as defendant RWS, due to the exponentially disproportionate volume of traffic coming out of the location.

68.     Cyber-Attack Doe hid its operating system, browser, and many parts of its digital fingerprint when launching the attacks in order to conceal its identity.

69.     Cyber-Attack Doe also deployed bots which are programmed to continually send hundreds and thousands of requests for service upon a single website in order to crash it, or at the very least, severely slow it down for other consumers trying to use the site.

70.     Cyber-Attack Doe has launched thousands of DoS and/or DDoS attacks against HomeSource's customers since the beginning of August 2018.

71.     The only HomeSource customers that have been victimized by these attacks were all former customers of RWS, as HomeSource's remaining customers were not targeted.

10

6873568 v1

## Count I – False and Misleading Advertising under the Lanham Act, 15 U.S.C. § 1125 (a) against Defendant RWS

72.     HomeSource repeats and incorporates all other paragraphs of this Complaint as if

fully set forth herein.

73.     Section 1125(a) of Title 15 of the United States Code states, in pertinent part, the

following:

> Any person who, on or in connection with any good or services, ... uses in commerce any word, term, name, symbol, ... or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact... which – in commercial advertising or promotion, misrepresents the nature, characteristics, qualities... of another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

74.     RWS's use of "HomeSource" in connection with materially false and misleading

statements about HomeSource's reputation, legal history, security, and the quality of its goods

and services, constitutes commercial advertising that misrepresents the nature, characteristics,

and qualities of HomeSource's goods, services, and commercial activities.

75.     RWS's conduct in disseminating emails and newsletters and placing phone calls

to HomeSource's customers and potential customers with materially false and misleading

statements about HomeSource constitutes false advertising and unfair competition.

76.     RWS's conduct constitutes false and misleading advertising in violation of 15

U.S.C. § 1125(a).

77.     HomeSource has no adequate remedy at law.  RWS's conduct has caused, and if

not enjoined, will continue to cause irreparable damage to the rights of HomeSource, its brand,

reputation and goodwill.

78.     As a result of RWS's conduct, HomeSource has been damaged.

11

## Count II – Defamation against Defendant RWS

79.     HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

80.     By engaging in the above-described conduct, RWS defamed HomeSource including, without limitation, by directly publishing and distributing emails and newsletters that deliberately, or at the very least negligently, (i) contain statements that are defamatory in nature and character; (ii) were published and disseminated by RWS to third parties, including HomeSource's customers and potential customers; (iii) were understood by their recipients to apply to HomeSource and to be defamatory; and (iv) caused special harm to HomeSource by virtue of such publications.

81.     RWS's statements contained in the emails and newsletters impute both civil offenses and business and professional misconduct to HomeSource – including, but not limited to, allegations that HomeSource was found liable of negligent misrepresentation and allegations that HomeSource failed to pay a prior customer despite a court order.

82.     RWS's statements contained in the emails and newsletters are the kind that would be particularly harmful to a business involved in e-commerce.

83.     The statements contained in the emails and newsletters have caused and will continue to cause substantial pecuniary and reputational harm to HomeSource.

84.     As a result, RWS is liable to HomeSource for damages caused by RWS's conduct.

## Count III – Tortious Interference with Prospective Economic Advantage against Defendant RWS

85.     HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

12

86.     HomeSource had a protected interest in its reasonable expectation of economic advantage, as it relates to HomeSource's prospective economic interests with potential customers of its goods/services.

87.     RWS willfully, maliciously, and intentionally interfered with HomeSource's prospective economic advantage by publishing materially false and misleading statements about HomeSource in newsletters and emails that RWS sent to HomeSource's potential customers, customers, and its customers' buyers.

88.     RWS's conduct was without justification.

89.     There is a reasonable likelihood that RWS's conduct caused HomeSource a loss of prospective economic gain.

90.     As a direct and proximate result of RWS's conduct, HomeSource has been and continues to be damaged.

91.     By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

### Count IV – Tortious Interference with Contract against Defendant RWS

92.     HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

93.     RWS was fully aware of the contractual relationship existing between HomeSource's customers and HomeSource, including the fact that a valid and enforceable contract existed between these parties, and RWS was a not a party to this contractual relationship.

94.     RWS willfully and intentionally interfered with the contractual relationship by publishing materially false and misleading statements about HomeSource in newsletters and emails that RWS sent to HomeSource's customers, and its customers' buyers.

13

95.    RWS's conduct is without justification.

96.    As a direct and proximate result of RWS's conduct, HomeSource has been and continues to be damaged.

97.    By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

### Count V – Common Law and Federal Unfair Competition against Defendant RWS

98.    HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

99.    RWS's conduct constitutes unfair competition, in that RWS is attempting to benefit commercially by stealing HomeSource's customers and publishing materially false and misleading statements about HomeSource.

100.   RWS's wrongful conduct arises directly out of and is connected to its advertising activities.

101.   Such acts constitute unfair competition against HomeSource under 15 U.S.C. § 1125.

102.   HomeSource has been and continues to be damaged by RWS's activities and conduct. Accordingly, HomeSource is entitled to recover its damages, pursuant to 15 U.S.C. §1117(a).

103.   Unless RWS's conduct is enjoined, HomeSource and its goodwill and reputation will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

104.   By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

14

## Count VI – Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A) against Defendant John Doe 1 ("Cyber-Attack Doe") and John Doe 2 ("Hacking Doe")

105.   HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

106.   Cyber-Attack Doe coordinated several DoS and DDoS attacks against HomeSource's computers systems and HomeSource's customers' websites that were designed to interfere with interstate commerce by dramatically slowing down and/or crashing the websites.

107.   Hacking Doe attempted to unlawfully and anonymously hack into HomeSource's platform and obtain HomeSource's customer data without authorization.

108.   Through their conduct, Cyber-Attack Doe and Hacking Doe knowingly caused the transmission of a program, information, code, or command with the intent to cause damage, without authorization, to a protected computer system.

109.   HomeSource's computer system and customers' websites are a protected computer under the CFAA because they are used in interstate commerce.

110.   As a direct result of Cyber-Attack Doe's and Hacking Doe's conduct, HomeSource has suffered at least $5,000 in damages in the past year through analyzing, investigating, and responding to the hacking, DoS, and DDoS attacks.

111.   By reason of the foregoing, HomeSource is entitled to injunctive relief, damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

## Count VII – Tortious Interference with Contract against Defendant John Doe 1 ("Cyber-Attack"), John Doe 2 ("Hacking Doe") and John Doe 3 ("Fake Customer Doe")

112.   HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

113.   Upon information and belief, the John Doe defendants were fully aware of the contractual relationship existing between HomeSource's customers and HomeSource, including

the fact that a valid and enforceable contract existed between these parties, and the defendants were not a party to this contractual relationship.

114. Cyber-Attack Doe willfully and intentionally interfered with the contractual relationship by coordinating DoS and DDoS attacks against HomeSource's customers' websites that were designed to dramatically slow down and/or crash the websites, and designed to sever and/or interfere with the contractual relationship between HomeSource and its customers as a result.

115. Hacking Doe willfully and intentionally interfered with the customer relationship by attempting to unlawfully hack into HomeSource's system and obtain and compromise customer data without authorization.

116. Fake-Customer Doe willfully and intentionally interfered with the customer relationship by disparaging HomeSource's services to HomeSource's customers (without any basis for doing so) and falsely holding himself out as a real customer.

117. The John Doe defendants' conduct is without justification.

118. As a direct and proximate result of Does' conduct, HomeSource has been and continues to be damaged.

119. By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

120. HomeSource reserves its right to move to amend to assert additional claims for relief against John Does 1-3, based upon information as to their identity or identities, as discovery proceeds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HomeSource prays for relief and judgment, and requests that the Court:

16

6873568 v1

(A)  enter judgment against RWS and John Does 1-3 and in favor of HomeSource with

respect to each claim for relief alleged in this Complaint;

(B)  award HomeSource injunctive relief, treble damages and its costs and attorneys'

fees, pursuant to the Lanham Act; and

(C)  award such other and further relief as the Court deems just and proper.

Respectfully submitted,

**FLASTER/GREENBERG P.C.**

Dated: September 4, 2018          By: */s/ Alexis Arena*

Alexis Arena, Esq.
Eric R. Clendening, Esq.
1810 Chapel Avenue West
Cherry Hill, NJ 08002
(856) 661-1900
Fax: (856) 661-1919
alexis.arena@flastergreenberg.com
*Attorneys for Plaintiff*

17



# EXHIBIT A

**From: RetailDeck <info@RetailerWebServices.com>**
**Date: July 20, 2018 at 1:33:39 AM EDT**
**To:**
**Subject: another update: what's happening with RetailDeck and ADC**

A lot has happened in just a few short days. Here are the latest developments from today, July 19th.

Email not displaying correctly?
View it in your browser.

2




RWS

RETAILER WEB SERVICES

 

RetailDeck  webfronts  Review  adrocket

## Breaking News: new communication from ADC

As of this evening, we still haven't received any communication directly from Ken Miele. We are still anxious to receive an answer to those three simple and important questions. But we did receive this email from the ADC office:

*"ADC has turned the Retail Deck Inventory Feed files back on for all dealers. RWS should receive files for each dealer in the next scheduled run at 12:15PM.*

*Please feel free to, not only populate the dealers websites with the information but, reestablish all Retail Deck account access as well."*

## Your RetailDeck account has been reinstated.

Our team has been busy monitoring the feeds, reinstating RetailDeck accounts and testing all integrations. Every ADC member should now have access to RetailDeck with current inventory/pricing information. If you cannot log into your account or see anything amiss, please contact us right away by responding to this email or calling 800-417-2799 ext 1 for support.

## RetailDeck will warn you if your feed is not current:

When you log into RetailDeck (store owner and store admin accounts only), you will see a

3

yellow bar across the top of your screen *if we have not received a feed for your store within the last 60 minutes*. It would look like this:



If you do not see a yellow warning bar, that means all is well and your data is current. This automated warning system will remain in place moving forward for your continued peace of mind.

We've been asked a lot of questions about the images with "Plessers.com" on HomeSource websites:

One of the videos we shared last night (this one specifically) showed HomeSource websites displaying product images with a Plessers.com watermark. Plessers is a NECO member that makes their own website. Here are the most common questions we received today about that and the facts to answer them.

Q: Are those images still there...and how many are there?

Case 1:19-mc-00006-JLW Document 2 Filed 01/21/19 Page 100 of 141

We did a little digging and found a *lot* more than we expected; see what we found in this 6 minute video about these images.

## Follow Up: Our investigation unearthed a possible major security concern with HomeSource sites. We have alerted ADC and HomeSource.

You can learn more about it in the same video from above.

## Q: Has HomeSource ever done anything like this before?

Public trials are part of the public record; anyone can view the official documents and transcripts of the lawsuits a company and their officers have been involved in. The White family, owners of HomeSource and similar other businesses, appear to have a history of their business relationships ending in lawsuits against them.

They were found guilty of making negligent misrepresentations about the capabilities of their software in a federal lawsuit (Civil Action No. 3:12-CV-0090). In a unanimous decision, the jury awarded their customer -- Furniture Distributors Inc, a chain of furniture stores -- $450,000. The judge later deemed the counter-claims they alleged along the way "totally meritless" and ordered them to pay Furniture Distributors Inc fifty thousand dollars to reimburse attorney fees in addition to the four hundred fifty thousand dollars already awarded them at trial. The honorable Judge Graham C. Mullen wrote:

*"Defendant failed to offer any evidence in support of this proposition. Defendant argues that it believed it had a basis for these claims at the time they were brought, but certainly it discovered that they were meritless at some point before trial. Its persistence in pressing these claims through discovery and depositions—and submitting them as issues for trial— amounts to a bad faith prosecution of the claims and justifies an award of attorney fees in this case."*

Despite the ruling, Furniture Distributors Inc sued Homesource again when Homesource failed to make any of the payments ordered (Case 3:15-CV-00313). In this federal lawsuit, their former customer alleged the White family fraudulently transferred assets to prevent having to pay the judgement and engaged in unfair and deceptive trade practices.

Their 2nd suit against the Whites cited yet another federal lawsuit Homesource was involved in at the time (Case 3:15-CV-00122). This suit was filed by Martin Salas, a consultant Homesource hired after the previous judgement to sell their products and assist in the transferring of assets, when he alleges Homesource failed to pay his outstanding compensation of $10,000/month and document the ownership stake he was promised in the White family entities. You can read his account in Exhibit B.

The ownership of the Homesource app software itself appears to be in question throughout these cases. During these federal lawsuits, the Whites alleged it is really owned by their retired school-teacher mother, Phyllis White. They produced 2 short and unsophisticated documents outlining a fifty thousand dollars per year plus 20% of sales royalty agreement. During Phyllis' deposition she did not know or could not recall:

- the name of the software
- what the software does
- when she acquired it
- who developed it
- if whoever gave it to her had the right to do so
- who drafted the license agreement
- how long the agreement is
- where the agreement is

o or what the agreement entailed.

And despite the signed license agreements that were furnished during these cases, in lines 3 – 7 of page 59 of her deposition, Phyllis states she was not aware of even executing any agreement to license her app or accounting software to Homasource and its president Greg White.

```
          FURNITURE DISTRIBUTORS, INC. v. JAMES R. WHITE, JR., ET AL.
                      Phyllis White on 12/11/2015           Page 59

1   business.   I had nothing to do with any kind of

2   licensing or anything else.

3        Q    Well, are you aware that you executed

4   a licensing agreement with Greg White?

5        A    No.

6        Q    You are not aware of that?

7        A    I said no.
```

These matters are far from ancient history as they were just recently resolved; the last document is dated August 30th, 2016.

## Q: Did ADC know about HomeSource's checkered legal history?

We have tried diligently to keep these communications strictly factual. We have no facts to share with you on this one. But we do have an opinion:

\*\*\*Opinion Editorial by Jim Kane\*\*\*

In my opinion, I think the likelihood ADC leadership was aware of HomeSource's past legal transgressions is very small. I find it hard to believe that anyone aware of this legal history would choose to place this company and these individuals in the position of high trust that goes along with operating eCommerce websites or a platform that handles sensitive and confidential information. Also, although this information is a matter of public record, it did take quite a bit of effort to locate. I believe they were unaware of these facts.

Several ADC members have asked for help connecting with other members that have concerns about the events of this week:

We don't want to presume, overstep or share contact information without your explicit permission. If you would like to be connected with other concerned members, click the button below and supply your contact information. We'll let you connect without us in the middle.

**Connect Me**

We would be thrilled to work with ADC:

The last few days have been challenging, but let us be clear. We would be thrilled to work

with ADC on deeper ordering integration, improvements to RetailDeck, the introduction of AdRocket to power vendor-funded digital advertising like we have done to great success with Intercounty, and any other projects that will help ADC members succeed in this rapidly changing retail environment. Our door is open. The welcome mat is out.

If you have more questions for us:
You are welcome to respond to this email or call us.

- Jim Kane, CEO and Founder of RWS
- and Jennie Gilbert, COO

unsubscribe from all emails

9

# EXHIBIT B

HI,
A new inquiry has been posted from the
website.
Below are the contact details of the
customer.

Name: Misc
Email: Misc@aol.com
Message:
Your website is TERRIBLE !! You have
lost my business due to the fact it's
soooo poor and I couldn't even search
for a simple refrigerator.

Thank you from

Website:

Email:
Telephone:

# EXHIBIT C



EXHIBIT 3

First Amended Complaint

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE HOMESOURCE, CORP.<br><br>     Plaintiff,<br><br> vs.<br><br>RETAILER WEB SERVICES, LLC and<br>JOHN DOES 1-3,<br><br>     Defendants. | Case No. 1:18-cv-11970 |

## <u>FIRST AMENDED COMPLAINT</u>

1.  Plaintiff The HomeSource, Corp. ("HomeSource") hereby amends its Complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) to assert additional claims against defendant John Does 1-3.  HomeSource does not yet know the identity of John Does 1-3 (or whether they share the same identity), but will seek this information through discovery.

2.  HomeSource filed its initial complaint against defendant Retailer Web Services, LLC ("RWS") for false advertising, defamation, tortious interference with commercial relationships, and unfair competition.  Both HomeSource and RWS provide competitive technology services, including but not limited to operating websites for the same types of retail store customers.

3.  In late 2017, HomeSource launched a product that directly competes with RWS's product and began to quickly acquire RWS customers.  On July 16, 2018, for example, HomeSource moved approximately 200 customers from RWS's platform to HomeSource's platform.

4.  The same day, RWS began a smear campaign designed to unfairly disparage HomeSource and deceive its customers.  RWS published false and misleading statements about

6873568 v1

HomeSource in newsletters distributed via email over the next few days to HomeSource's customers and potential customers.  RWS further contacted HomeSource's customers and potential customers by telephone regarding the same issues.

5.      On or about July 19, 2018, RWS misrepresented security vulnerabilities of HomeSource's data and intellectual property to third parties.  RWS emailed HomeSource notice of a "security hole" in HomeSource's software at 11:59 p.m., and then uploaded a video at 1:33 a.m. just hours later advertising the "security hole" to the public.

6.      On July 20, 2018, RWS sent out the newsletter attached as Exhibit A to the parties' customers and potential customers.  This lawsuit followed on July 23.

7.      Beginning on or about August 9, 2018, John Doe 1 (hereinafter referred to as "Cyber-Attack Doe"), engaged in a series of denial of service ("DoS") and/or distributed denial of service ("DDoS") attacks on HomeSource's customers' websites, in an apparent effort to slow down, interrupt, and/or crash those websites.

8.      HomeSource was able to successfully block these attacks within a few days.

9.      Immediately thereafter (after the close of business on August 13), John Doe 2 (hereinafter referred to as "Hacking Doe") attempted to "hack" into HomeSource's platform, or to gain unauthorized access to HomeSource's customer data.  On August 13, 2018, at 9:02 pm, RWS's CEO, Jim Kane, sent HomeSource an email notifying HomeSource of the hacking attempt, stating:

> "We have observed that the following websites...which we believe to be operated by HomeSource, appear to have been compromised by a third party (see attached screen shots).  We wanted to let you know as a professional courtesy in case any customer information has been compromised."

2

10.     Hacking Doe's attack occurred the night before HomeSource had a meeting to show a new potential customer (and current large customer of RWS) its platform.

11.     The **only** HomeSource customers targeted by Hacking Doe appear to be HomeSource customers that are former RWS customers.  HomeSource possesses evidence that Hacking Doe was working from a specific, non-public list of former RWS customers.

12.     To complete the attack, Hacking Doe manually entered information that was only available to RWS and HomeSource.  Specifically, Hacking Doe entered in the website addresses and IP addresses of customers that had switched from RWS to HomeSource, even where that information was not publicly available.

13.     On or about August 18, 2018, HomeSource was notified that John Doe 3 (hereinafter "Fake-Customer Doe") was sending emails to HomeSource's customers complaining about HomeSource's website functionality.  A copy of one such email (from misc@aol.com) is attached hereto as Exhibit B.

14.     Following the receipt of the email attached hereto as Exhibit B, HomeSource investigated the Internet activity of Fake-Customer Doe and uncovered evidence that Fake-Customer Doe's claims in Exhibit B are false.  HomeSource also uncovered that Fake-Customer Doe went to great lengths to hide its digital fingerprints – something a normal consumer would ordinarily not do or know how to do.

15.     On or about August 27, 2018, Cyber-Attack Doe launched another set of DoS and/or DDoS attacks through the use of bots, using a different method.

16.     HomeSource also shut down these attacks, using a different method.

17.     In doing so, and as set forth more fully below, HomeSource observed an exponentially disproportionate amount of website traffic coming from Scottsdale, Arizona.  This

3

traffic originated from the location set forth in Exhibit C, which appears to be within a mile of RWS's office.

18.     HomeSource brings this first amended complaint against Cyber-Attack Doe and Hacking Doe for tortious interference with commercial relationships and violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  HomeSource asserts an additional claim for tortious interference with commercial relationships against Fake-Customer Doe.

19.     As a result of RWS's and John Doe 1-3's unlawful actions, HomeSource has lost customers and its reputation has been unfairly damaged in an amount to be determined at trial.

## PARTIES

20.     Plaintiff HomeSource is a New Jersey corporation with its principal place of business at 420 Ganttown Road, Sewell, NJ 08080.

21.     Defendant RWS is an Arizona limited liability company with a principal place of business at 15615 N. 71ST Street, Suite 205, Scottsdale, AZ 85254.

22.     Defendant RWS's statutory registered agent is: Kingsley Law Firm PLC, 14362 N. Frank Lloyd Wright BLVD, #1000, Scottsdale, AZ 85260.

23.     At this time, HomeSource does not know the identity of the defendant Does. When that information is known, HomeSource will amend its pleading to identify that person/entity and any other person/entity associated with that person.

24.     HomeSource attempted to "trace" the location of the defendant Does without the benefit of any discovery by analyzing the volume and origin of all web traffic since RWS sent the newsletter and emails in mid July 2018.

25.     HomeSource uncovered over 114,000 requests to access/search their customers' websites from Arizona, and approximately 38,000 requests within a mile of RWS's main office.

4

26.     On average, many of HomeSource's customers' websites see 150-300 users per day.

27.     HomeSource does not have any information yet confirming the location of Hacking Doe or Fake-Customer Doe.

## JURISDICTION AND VENUE

28.     This Court has federal question jurisdiction over HomeSource's federal claims pursuant to 28 U.S.C. §§ 1331, 1338(a).

29.     This court has personal jurisdiction over defendant RWS because RWS is engaged in the systematic and continuous conduct of business in the State of New Jersey. RWS's conduct in connection with the State of New Jersey required it reasonably to anticipate that it would be subject to the jurisdiction of the courts in the State of New Jersey.

30.     Upon information and belief, this court has personal jurisdiction over defendant Does because Does expressly aimed tortious conduct at HomeSource, a New Jersey corporation, via the internet such that defendant Does could reasonably anticipate being haled into district court in New Jersey due to their tortious conduct.

31.     Venue in the District of New Jersey is proper under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

**A.    HomeSource and RWS**

32.     HomeSource provides software and data solutions for retailers and manufacturers.

33.     HomeSource's proprietary software aggregates large amounts of data – including item numbers, product specs, training videos, and more – into one single, usable platform, which allows retailers and manufacturers to streamline various processes such as printing customized quotes, providing accurate shipping times, and real-time updating of sizes, colors, and options so dealers always have current and accurate information at their fingertips.

5

34.     Upon information and belief, RWS offers a competitive tool called "RetailDeck/WebFronts."

35.     Recently, GridIron Capital ("GridIron"), and its subsidiary Nationwide Marketing Group ("Nationwide"), considered investing in HomeSource, and all three parties entered into a non-disclosure agreement ("NDA").

36.     Through the due diligence process, GridIron and Nationwide acquired a great deal of sensitive, proprietary information about HomeSource, its software, financial reports, and legal history.

37.     GridIron and Nationwide ended up not investing in HomeSource, but they did invest in RWS, according to a press release from February 24, 2018.

38.     Recently, several companies, including Appliance Dealers Cooperative ("ADC") and its members, have switched from using RWS's "RetailDeck/WebFronts" platform to using HomeSource's platform.

**B.      RWS's False and Misleading Advertising and Tortious Interference**

39.     On or about July 20, 2018, RWS's CEO Jim Kane and COO Jennie Gilbert emailed a newsletter to HomeSource's customers and potential customers which contained materially false and misleading statements about HomeSource.  *See* July 20th Newsletter, attached as Exhibit A.

40.     Under the heading, "Has HomeSource ever done anything like this before?", RWS stated, "The White family, owners of HomeSource and similar other businesses, appear to have a history of their business relationships ending in lawsuits against them.  They were found guilty of making **negligent misrepresentations about the capabilities of their software in a federal lawsuit** (Civil Action NO. 3:12-CV-0090)."

6

6873568 v1

41.     The text "Civil Action NO. 3:12-CV-0090" contains a hyperlink to Judge Graham Mullen's Order ("Graham Order") on a motion for attorney's fees in the case of *Furniture Distributors, Inc. v. Software Support-PMW, Inc.* ("Furniture Lawsuit").

42.     HomeSource was not a party in the Furniture Lawsuit and was not found "guilty" of making negligent misrepresentations about the capability of their software.

43.     No member of the White family was a party in the Furniture Lawsuit, and no member of the White family was found "guilty" of making negligent misrepresentations about the capability of their software.

44.     RWS further misrepresented: "The judge later deemed the counter-claims they alleged along the way 'totally meritless' and ordered them to pay Furniture Distributors, Inc. fifty thousand dollars to reimburse attorney fees in addition to the four hundred fifty thousand dollars already awarded them at trial."

45.     RWS's use of "they" implies that HomeSource and the White family filed these counterclaims, but once again, they were not parties to the lawsuit, and it was actually Software Support-PMW, Inc. who filed these counterclaims in the action.

46.     The Graham Order does not mention HomeSource or the White family at all.

47.     RWS's newsletter misleadingly and falsely implies that HomeSource and/or its owners were found "guilty" of negligent misrepresentations, but they are not even parties to this lawsuit, and the Graham Order deals with a motion for attorney's fees.

48.     RWS goes on to state in the newsletter: "Despite the ruling, **Furniture Distributors Inc sued Homesource again when Homesource failed to make any of the payments ordered** (Case 3:15-CV-00313)."

49.     The text "Case 3:15-CV-00313" contains a hyperlink to a Complaint filed in the United States District Court for the Western District of North Carolina, *Furniture Distributors,*

7

6873568 v1

*Inc. v. James R. White, Jr.; James R. White, Sr.; Phyllis M. White; Gregory L. White; Courtney Murnane; Software-Support PMW, Inc.; The Homesource, Corp.; BBJ Corp., and Centerspec, LLC*.

50.     RWS falsely states that HomeSource was sued for a second time by Furniture Distributors, Inc., but HomeSource was not a party to the original Furniture Lawsuit.

51.     RWS falsely states that HomeSource failed to make any of the payments ordered, but HomeSource was not ordered to make any payments and it was not a party to the prior lawsuit.

52.     RWS misrepresented that HomeSource failed to make payments in order to intentionally disparage HomeSource's business and damages its relationship with its customers and potential customers.

53.     RWS further misrepresented that Martin Salas was a consultant hired by HomeSource, but HomeSource never hired or entered into any contract with Martin Salas directly.

54.     Upon information and belief, after HomeSource filed the initial complaint in this action, RWS continued to make false, misleading, and/or defamatory statements about HomeSource to HomeSource's customers, potential customers, and third parties.

**C.     RWS Misrepresented Security Vulnerabilities and Tried to Pose as a Customer to Acquire Access to HomeSource's Systems**

55.     On July 19, 2018, at 11:58 p.m., Jim Kane, CEO of RWS, emailed HomeSource and Ken Miele, of ADC, to point out a potential security hole and vulnerability in HomeSource's systems.

56.     Less than two hours later, RWS emailed the July 20th Newsletter to HomeSource's customers which states: "Our investigation unearthed a possible major security concern with HomeSource sites." *See* Exhibit A.

57.     The July 20th Newsletter contained a link to a short video where Jim Kane explains how he believes one could hack into HomeSource's system, and he provides the steps one could take in order to do it.

58.     The video misrepresents the security of customers' files and alleges that they are publicly available, when in fact, HomeSource does not store customer information in this "bucket" or online folder.

59.     Upon information and belief, an employee at RWS left a voicemail for HomeSource in which he posed as a potential customer named Tony Bosco, who claimed to be opening a store for furniture and appliances called Kensington Appliance and Furniture, in order to deceive HomeSource and gain access to their data and methods.

60.     Upon information and belief, although "Tony Bosco" alleged that he was from the suburbs of Pittsburgh, his phone number traced back to an RWS number.

**D.     Cyber-Attack Doe Launched DoS and/or DDoS Attacks against HomeSource's Customers' Websites**

61.     In 2018, HomeSource moved hundreds of customers from RWS's platform to HomeSource's platform.

62.     These customers are predominantly local retailers that sell appliances, electronics, and furniture through a brick and mortar store and a website.

63.     HomeSource provides these customers with e-commerce solutions for their websites through its pricing-lookup tool and software.

9

64.     Upon information and belief, RWS has delayed and/or ignored requests from RWS's former/current customers to have their domains released so they can be transferred to HomeSource's platform.

65.     Beginning in August 2018, Cyber-Attack Doe deployed several DoS and DDoS attacks through the use of bots and/or programs that only targeted HomeSource's customers who also used to be customers of RWS.

66.     In these DoS and DDoS attacks, the bots and/or programs would continually view the websites and run hundreds and thousands of searches in an effort to overload HomeSource's computer systems and software and crash the websites.

67.     Upon information and belief, HomeSource has reason to believe that Cyber-Attack Doe's attacks were and are coming out of Scottsdale, Arizona, the same location as defendant RWS, due to the exponentially disproportionate volume of traffic coming out of the location.

68.     Cyber-Attack Doe hid its operating system, browser, and many parts of its digital fingerprint when launching the attacks in order to conceal its identity.

69.     Cyber-Attack Doe also deployed bots which are programmed to continually send hundreds and thousands of requests for service upon a single website in order to crash it, or at the very least, severely slow it down for other consumers trying to use the site.

70.     Cyber-Attack Doe has launched thousands of DoS and/or DDoS attacks against HomeSource's customers since the beginning of August 2018.

71.     The only HomeSource customers that have been victimized by these attacks were all former customers of RWS, as HomeSource's remaining customers were not targeted.

6873568 v1

**<u>Count I – False and Misleading Advertising under the Lanham Act, 15 U.S.C. § 1125 (a)</u>**
**<u>against Defendant RWS</u>**

72.     HomeSource repeats and incorporates all other paragraphs of this Complaint as if fully set forth herein.

73.     Section 1125(a) of Title 15 of the United States Code states, in pertinent part, the following:

> Any person who, on or in connection with any good or services, … uses in commerce any word, term, name, symbol, … or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact… which – in commercial advertising or promotion, misrepresents the nature, characteristics, qualities… of another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

74.     RWS's use of "HomeSource" in connection with materially false and misleading statements about HomeSource's reputation, legal history, security, and the quality of its goods and services, constitutes commercial advertising that misrepresents the nature, characteristics, and qualities of HomeSource's goods, services, and commercial activities.

75.     RWS's conduct in disseminating emails and newsletters and placing phone calls to HomeSource's customers and potential customers with materially false and misleading statements about HomeSource constitutes false advertising and unfair competition.

76.     RWS's conduct constitutes false and misleading advertising in violation of 15 U.S.C. § 1125(a).

77.     HomeSource has no adequate remedy at law.  RWS's conduct has caused, and if not enjoined, will continue to cause irreparable damage to the rights of HomeSource, its brand, reputation and goodwill.

78.     As a result of RWS's conduct, HomeSource has been damaged.

6873568 v1

## Count II – Defamation against Defendant RWS

79.     HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

80.     By engaging in the above-described conduct, RWS defamed HomeSource including, without limitation, by directly publishing and distributing emails and newsletters that deliberately, or at the very least negligently, (i) contain statements that are defamatory in nature and character; (ii) were published and disseminated by RWS to third parties, including HomeSource's customers and potential customers; (iii) were understood by their recipients to apply to HomeSource and to be defamatory; and (iv) caused special harm to HomeSource by virtue of such publications.

81.     RWS's statements contained in the emails and newsletters impute both civil offenses and business and professional misconduct to HomeSource – including, but not limited to, allegations that HomeSource was found liable of negligent misrepresentation and allegations that HomeSource failed to pay a prior customer despite a court order.

82.     RWS's statements contained in the emails and newsletters are the kind that would be particularly harmful to a business involved in e-commerce.

83.     The statements contained in the emails and newsletters have caused and will continue to cause substantial pecuniary and reputational harm to HomeSource.

84.     As a result, RWS is liable to HomeSource for damages caused by RWS's conduct.

## Count III – Tortious Interference with Prospective Economic Advantage against Defendant RWS

85.     HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

6873568 v1

86.     HomeSource had a protected interest in its reasonable expectation of economic advantage, as it relates to HomeSource's prospective economic interests with potential customers of its goods/services.

87.     RWS willfully, maliciously, and intentionally interfered with HomeSource's prospective economic advantage by publishing materially false and misleading statements about HomeSource in newsletters and emails that RWS sent to HomeSource's potential customers, customers, and its customers' buyers.

88.     RWS's conduct was without justification.

89.     There is a reasonable likelihood that RWS's conduct caused HomeSource a loss of prospective economic gain.

90.     As a direct and proximate result of RWS's conduct, HomeSource has been and continues to be damaged.

91.     By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

**Count IV – Tortious Interference with Contract against Defendant RWS**

92.     HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

93.     RWS was fully aware of the contractual relationship existing between HomeSource's customers and HomeSource, including the fact that a valid and enforceable contract existed between these parties, and RWS was a not a party to this contractual relationship.

94.     RWS willfully and intentionally interfered with the contractual relationship by publishing materially false and misleading statements about HomeSource in newsletters and emails that RWS sent to HomeSource's customers, and its customers' buyers.

13

6873568 v1

95.     RWS's conduct is without justification.

96.     As a direct and proximate result of RWS's conduct, HomeSource has been and continues to be damaged.

97.     By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

**Count V – Common Law and Federal Unfair Competition against Defendant RWS**

98.     HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

99.     RWS's conduct constitutes unfair competition, in that RWS is attempting to benefit commercially by stealing HomeSource's customers and publishing materially false and misleading statements about HomeSource.

100.    RWS's wrongful conduct arises directly out of and is connected to its advertising activities.

101.    Such acts constitute unfair competition against HomeSource under 15 U.S.C. § 1125.

102.    HomeSource has been and continues to be damaged by RWS's activities and conduct.  Accordingly, HomeSource is entitled to recover its damages, pursuant to 15 U.S.C. §1117(a).

103.    Unless RWS's conduct is enjoined, HomeSource and its goodwill and reputation will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

104.    By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

14

6873568 v1

**Count VI – Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A) against Defendant John Doe 1 ("Cyber-Attack Doe") and John Doe 2 ("Hacking Doe")**

105.    HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

106.    Cyber-Attack Doe coordinated several DoS and DDoS attacks against HomeSource's computers systems and HomeSource's customers' websites that were designed to interfere with interstate commerce by dramatically slowing down and/or crashing the websites.

107.    Hacking Doe attempted to unlawfully and anonymously hack into HomeSource's platform and obtain HomeSource's customer data without authorization.

108.    Through their conduct, Cyber-Attack Doe and Hacking Doe knowingly caused the transmission of a program, information, code, or command with the intent to cause damage, without authorization, to a protected computer system.

109.    HomeSource's computer system and customers' websites are a protected computer under the CFAA because they are used in interstate commerce.

110.    As a direct result of Cyber-Attack Doe's and Hacking Doe's conduct, HomeSource has suffered at least $5,000 in damages in the past year through analyzing, investigating, and responding to the hacking, DoS, and DDoS attacks.

111.    By reason of the foregoing, HomeSource is entitled to injunctive relief, damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

**Count VII – Tortious Interference with Contract against Defendant John Doe 1 ("Cyber-Attack"), John Doe 2 ("Hacking Doe") and John Doe 3 ("Fake Customer Doe")**

112.    HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

113.    Upon information and belief, the John Doe defendants were fully aware of the contractual relationship existing between HomeSource's customers and HomeSource, including

15

6873568 v1

the fact that a valid and enforceable contract existed between these parties, and the defendants were not a party to this contractual relationship.

114.    Cyber-Attack Doe willfully and intentionally interfered with the contractual relationship by coordinating DoS and DDoS attacks against HomeSource's customers' websites that were designed to dramatically slow down and/or crash the websites, and designed to sever and/or interfere with the contractual relationship between HomeSource and its customers as a result.

115.    Hacking Doe willfully and intentionally interfered with the customer relationship by attempting to unlawfully hack into HomeSource's system and obtain and compromise customer data without authorization.

116.    Fake-Customer Doe willfully and intentionally interfered with the customer relationship by disparaging HomeSource's services to HomeSource's customers (without any basis for doing so) and falsely holding himself out as a real customer.

117.    The John Doe defendants' conduct is without justification.

118.    As a direct and proximate result of Does' conduct, HomeSource has been and continues to be damaged.

119.    By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

120.    HomeSource reserves its right to move to amend to assert additional claims for relief against John Does 1-3, based upon information as to their identity or identities, as discovery proceeds.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff HomeSource prays for relief and judgment, and requests that the Court:

6873568 v1

(A)     enter judgment against RWS and John Does 1-3 and in favor of HomeSource with respect to each claim for relief alleged in this Complaint;

(B)     award HomeSource injunctive relief, treble damages and its costs and attorneys' fees, pursuant to the Lanham Act; and

(C)     award such other and further relief as the Court deems just and proper.

Respectfully submitted,

**FLASTER/GREENBERG P.C.**

Dated: September 4, 2018          By:   */s/ Alexis Arena*
                                        Alexis Arena, Esq.
                                        Eric R. Clendening, Esq.
                                        1810 Chapel Avenue West
                                        Cherry Hill, NJ 08002
                                        (856) 661-1900
                                        Fax:  (856) 661-1919
                                        alexis.arena@flastergreenberg.com
                                        *Attorneys for Plaintiff*

17

# EXHIBIT A

**From:** RetailDeck <info@RetailerWebServices.com>
**Date:** July 20, 2018 at 1:33:39 AM EDT
**To:** █████████████
**Subject: another update: what's happening with RetailDeck and ADC**

A lot has happened in just a few short days. Here are the latest developments from today, July 19th.

Email not displaying correctly?
View it in your browser.

2



   

**Breaking News: new communication from ADC**

As of this evening, we still haven't received any communication directly from Ken Miele. We are still anxious to receive an answer to those <u>three simple and important questions</u>.  But we did receive this email from the ADC office:

*"ADC has turned the Retail Deck Inventory Feed files back on for all dealers.  RWS should receive files for each dealer in the next scheduled run at 12:15PM.*

*Please feel free to, not only populate the dealers websites with the information but,  reestablish all Retail Deck account access as well."*

## Your RetailDeck account has been reinstated.

Our team has been busy monitoring the feeds, reinstating RetailDeck accounts and testing all integrations. Every ADC member should now have access to RetailDeck with current inventory/pricing information. If you cannot log into your account or see anything amiss, please contact us right away by responding to this email or calling 800-417-2799 ext 1 for support.

## RetailDeck will warn you if your feed is not current:

When you log into RetailDeck (store owner and store admin accounts only), you will see a

3

yellow bar across the top of your screen *if we have not received a feed for your store within the last 60 minutes.* It would look like this:



If you do not see a yellow warning bar, that means all is well and your data is current. This automated warning system will remain in place moving forward for your continued peace of mind.

## We've been asked a lot of questions about the images with "[Plessers.com](Plessers.com)" on HomeSource websites:

One of the videos we shared last night ([this one](this one) specifically) showed HomeSource websites displaying product images with a [Plessers.com](Plessers.com) watermark. Plessers is a NECO member that makes their own website. Here are the most common questions we received today about that and the facts to answer them.

## Q: Are those images still there...and how many are there?

4

We did a little digging and found a *lot* more than we expected; see what we found in this [6 minute video](#) about  these images.

## Follow Up: Our investigation unearthed a possible major security concern with HomeSource sites. We have alerted ADC and HomeSource.

You can learn more about it in the same [video](#) from above.

## Q: Has HomeSource ever done anything like this before?

Public trials are part of the public record; anyone can view the official documents and transcripts of the lawsuits a company and their officers have been involved in. The White family, owners of HomeSource and similar other businesses, appear to have a history of their business relationships ending in lawsuits against them.

They were found guilty of making **negligent misrepresentations about the capabilities of their software in a federal lawsuit** ([Civil Action No. 3:12-CV-0090](#)). In a unanimous decision, the jury awarded their customer – Furniture Distributors Inc, a chain of furniture stores – $450,000. The judge later deemed the counter-claims they alleged along the way "totally meritless" and ordered them to pay Furniture Distributors Inc fifty thousand dollars to reimburse attorney fees in addition to the four hundred fifty thousand dollars already awarded them at trial. The honorable Judge Graham C. Mullen wrote:

*"Defendant failed to offer any evidence in support of this proposition. Defendant argues that it believed it had a basis for these claims at the time they were brought, but certainly it discovered that they were meritless at some point before trial. Its persistence in pressing these claims through discovery and depositions—and submitting them as issues for trial— amounts to a bad faith prosecution of the claims and justifies an award of attorney fees in this case."*

5

Despite the ruling, **Furniture Distributors Inc sued Homesource again when Homesource failed to make any of the payments ordered** (Case 3:15-CV-00313). In this federal lawsuit, their former customer alleged the White family **fraudulently transferred assets** to prevent having to pay the judgement and **engaged in unfair and deceptive trade practices**.

Their 2nd suit against the Whites cited **yet another federal lawsuit Homesource was involved in** at the time (Case 3:15-CV-00122). This suit was filed by Martin Salas, a consultant Homesource hired after the previous judgement to sell their products and assist in the transferring of assets, when he alleges Homesource failed to pay his outstanding compensation of $10,000/month and document the ownership stake he was promised in the White family entities. You can read his account in Exhibit B.

**The ownership of the Homesource app software itself appears to be in question throughout these cases.** During these federal lawsuits, the Whites alleged it is really owned by their retired school-teacher mother, Phyllis White. They produced 2 short and unsophisticated documents outlining a fifty thousand dollars per year plus 20% of sales royalty agreement. During Phyllis' deposition she did not know or could not recall:

- the name of the software
- what the software does
- when she acquired it
- who developed it
- if whoever gave it to her had the right to do so
- who drafted the license agreement
- how long the agreement is
- where the agreement is

6

- or what the agreement entailed.

And despite the signed license agreements that were furnished during these cases, in lines 3 – 7 of page 59 of her deposition, Phyllis states she was not aware of even executing any agreement to license her app or accounting software to Homesource and its president Greg White.

| FURNITURE DISTRIBUTORS, INC. v. JAMES R. WHITE, JR., ET AL. |
|---|
| Phyllis White on 12/11/2015 — Page 59 |

```
 1   business.   I had nothing to do with any kind of

 2   licensing or anything else.

 3        Q     Well, are you aware that you executed

 4   a licensing agreement with Greg White?

 5        A     No.

 6        Q     You are not aware of that?

 7        A     I said no.
```

These matters are far from ancient history as they were just recently resolved; the last document is dated August 30th, 2016.

## Q: Did ADC know about HomeSource's checkered legal history?

We have tried diligently to keep these communications strictly factual. We have no facts to share with you on this one. But we do have an opinion:

7

***Opinion Editorial by Jim Kane\****

*In my opinion, I think the likelihood ADC leadership was aware of HomeSource's past legal transgressions is very small. I find it hard to believe that anyone aware of this legal history would choose to place this company and these individuals in the position of high trust that goes along with operating eCommerce websites or a platform that handles sensitive and confidential information. Also, although this information is a matter of public record, it did take quite a bit of effort to locate. I believe they were unaware of these facts.*

## Several ADC members have asked for help connecting with other members that have concerns about the events of this week:

We don't want to presume, overstep or share contact information without your explicit permission. If you would like to be connected with other concerned members, click the button below and supply your contact information. We'll let you connect without us in the middle.

## We would be thrilled to work with ADC:

The last few days have been challenging, but let us be clear. We would be thrilled to work

8

with ADC on deeper ordering integration, improvements to RetailDeck, the introduction of AdRocket to power vendor-funded digital advertising like we have done to great success with Intercounty, and any other projects that will help ADC members succeed in this rapidly changing retail environment. Our door is open. The welcome mat is out.

## If you have more questions for us:

You are welcome to respond to this email or call us.

*- Jim Kane, CEO and Founder of RWS*
*- and Jennie Gilbert, COO*

unsubscribe from all emails

9

# EXHIBIT B

Hi,
A new inquiry has been posted from the website.
Below are the contact details of the customer.

Name: Misc
Email: Misc@aol.com
Message:
Your website is TERRIBLE !!  You have lost my business due to the fact it's soooo poor and I couldn't even search for a simple refrigerator.

Thank you from ███████████████
████████████
Website:
████████████████████████
Email: ██████████████████████
Telephone: ████████████████

# EXHIBIT C





**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE HOMESOURCE, CORP.<br><br>         Plaintiff,<br><br>   vs.<br><br>RETAILER WEB SERVICES, LLC<br><br>        Defendant. | Case No. 1:18-cv-11970 |

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2018, I served the Amended Complaint on all counsel of record using the Court's ECF system.

/s/ *Alexis Arena* _____
Alexis Arena, Esq.
FLASTER/GREENBERG P.C.
1810 Chapel Ave. West
Cherry Hill, NJ 08002

*Attorneys for Plaintiff*

6865377 v1